IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE PANECCASIO | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:01CV2065(CFD) |
| | : | |
| UNISOURCE WORLDWIDE, INC., et al. | : | |
| | : | |
| Defendants | : | October 29, 2004 |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE IKON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.      INTRODUCTION**

This case arises out of Plaintiff Eugene Paneccasio's claim that, notwithstanding

the express terms of the 1991 Deferred Compensation Plan (the "Plan") permitting the Board of

Directors of IKON Office Solutions, Inc. to terminate the Plan in its entirety under certain

circumstances, the Plan could not be terminated as to him.  In pursuing this action, Paneccasio

attempts to recover benefits that are simply not available under the terms of the Plan.  Paneccasio

argues nonetheless that there exist violations of the Employee Retirement Income Security Act

("ERISA") and the Age Discrimination in Employment Act ("ADEA").  These arguments,

however, ignore the plain language of the Plan.  The Plan's Termination Provision gave the

Board of Directors of IKON the discretion to determine whether the Plan would cause an adverse

financial impact on IKON and to act to terminate the Plan under such circumstances.  The Board

made such a determination and took action to terminate the Plan.  Thereafter, the benefits

specified under the Termination Provision were paid to all Plan participants, including

Paneccasio. The termination of the Plan and the subsequent payment of benefits in accordance with the Plan's Termination Provision were lawful under both ERISA and the ADEA.

Pursuant to Fed. R. Civ. P. 56, Defendants Alco Standard Corporation ("Alco"), IKON Office Solutions, Inc. ("IKON"), the Board of Directors of IKON (the "Board"), and W.J. Hope, Jr. (collectively referred to as the "IKON Defendants") have filed their Motion for Summary Judgment requesting that the Court enter judgment in their favor as a matter of law.[1] There are no material issues of fact for the Court to resolve at trial.[2] In support of their motion for summary judgment, the IKON Defendants submit this Memorandum of Law and their Local Rule 56(a)(1) Statement with accompanying evidentiary materials.

## II. STATEMENT OF UNDISPUTED FACTS

The IKON Defendants' Statement of Undisputed Facts is set forth in their Local Rule 56(a)(1) Statement, which has been filed separately from this Memorandum of Law.

## III. ARGUMENT

### A. The Legal Standard Applicable to this Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[1]    Defendants Unisource Worldwide, Inc. ("Unisource") and Georgia-Pacific Corporation ("Georgia-Pacific") are filing their motion for summary judgment separately.

[2]    If the IKON Defendants' motion for summary judgment is denied, Paneccasio's ERISA claims should be determined by the Court as the factfinder at trial, not a jury. Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1258 (2d Cir. 1996) (holding that there is no right to a trial by jury in a suit brought to recover ERISA benefits).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. Id. at 325. Once the moving party makes this initial showing, the burden shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation" by the movant). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the nonmoving party is unable to establish the existence of an element essential to its case on which it bears the burden of proof at trial, a genuine issue of material fact cannot exist "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

Thus, summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000). IKON respectfully submits that there is no genuine issue of material fact in this case. Paneccasio was paid all of the benefits to which he was entitled under the terms of the Plan and in accordance with the Plan's Termination Provision. See Plan, Section 19 (IKCP 118, Appendix to the IKON Defendants' Local Rule 56(a)(1) Statement ("App.") Ex. 3). As the IKON Defendants violated neither ERISA nor the ADEA, they are entitled to summary judgment as a matter of law in their favor and against Paneccasio.

**B.    Paneccasio's Claims Under ERISA are Deficient and Must be Dismissed as a Matter of Law.**

In his Eighth Claim for Relief, Paneccasio seeks to recover for alleged ERISA violations from the IKON Defendants, Unisource and Georgia-Pacific. Although he does not specify the provisions of ERISA pursuant to which he is attempting to assert his claims, Paneccasio describes his Eighth Claim for Relief as "Breach of Duty, fiduciary and non-fiduciary, Equitable Estoppel and Violation of ERISA." (Complaint § XI.)

At the outset, it is important to note that the United States District Court for the District of Vermont in Holcomb v. IKON Office Solutions, Inc., Civil Action No. 2:03-CV-106, a case involving the same Plan that is at issue here, rejected plaintiff Norman Holcomb's claim that the Plan was wrongfully terminated. See Holcomb Opinion and Order attached hereto as Exhibit A. The court specifically held that IKON's Board had the right to terminate the Plan because of the decline in interest rates and the concomitant adverse financial effect the Plan caused IKON. Accordingly, in the instant case, the payment of the Termination Benefit[3] to Paneccasio upon termination of the Plan was neither arbitrary nor capricious. To the extent that Paneccasio seeks to assert a breach of fiduciary duty claim, that claim fails because top hat plans are exempt from ERISA's fiduciary duty provisions. Paneccasio's breach of fiduciary duty claim also fails because the termination of a Plan is a settlor function, not a fiduciary function, in any event. To the extent that Paneccasio is asserting an equitable estoppel claim based on the federal common law developed under ERISA, that claim is deficient in that Paneccasio received

---

[3]     Pursuant to Plan Section 19, upon the termination of the Plan, the benefit payable to a participant whose benefits had not yet commenced was "the value of the amount of the Participant's deferrals to the date of termination plus interest (compounded annually) at a rate of 6% per annum." The benefits payable under Section 19 of the Plan are referred to as the "Termination Benefit."

all of the benefits to which he was entitled and there are no extraordinary circumstances that

justify his estoppel claim.

> **1.     Payment of the Termination Benefit Was Neither Arbitrary Nor Capricious.**

The Plan, since its inception,[4] has specifically reserved the right to IKON's Board

of Directors to terminate the Plan under certain circumstances.  See Plan, Section 19 (IKCP 118,

App. Ex. 3).

> Section 19, the Plan's termination provision, stated that:
>
> The Board of Directors of Alco shall have the right to terminate the Plan in its
> entirety and not in part at any time it determines that proposed or pending tax law
> changes or other events cause, or are likely in the future to cause, the Plan to have
> an adverse financial impact upon Alco.  In such event, Alco shall have no liability
> or obligation under the Plan or the Participant's Participation Agreement (or any
> other document), provided that 1) Alco distributes, in lump sum, to any
> participant whose benefits have not commenced, the value of the amount of the
> Participant's deferrals to the date of termination plus interest (compounded
> annually) at a rate of 6% per annum; and 2) Alco distributes, in a lump sum, to
> any Participant whose benefit payments have commenced, all amounts thereafter
> due, in an amount as calculated in accordance with Paragraph [20], "Acceleration
> of Benefits."  Such lump-sum distribution, at Alco's election, may be made in the
> form of cash, or life insurance, or both.

See Plan, Section 19 (IKCP 118, App. Ex. 3).

The Supreme Court has made clear that, under ERISA, employers are "generally

free . . . for any reason at any time, to adopt, modify or terminate [their] plans."  Inter-Modal

Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry., 520 U.S. 510, 515, (1997).  See also

Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to

---

[4]    This termination provision existed as part of the Plan when Paneccasio was initially
offered participation in the Plan and he executed his Participation Agreement on November 16,
1990.  Moreover, Paneccasio's Participation Agreement which expressly incorporated the terms
of the Plan. (PANE 595, App. Ex. 2.)  Accordingly, Paneccasio made the determination to
participate in the Plan having been fully apprised of the reservation of the right to terminate the
Plan as set forth in Section 19.

establish employee benefits plans.   Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.").   Consistent with this line of Supreme Court cases, the Second Circuit has enforced provisions in plan documents that reserve an employer's right to amend or terminate the plan.  See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 491 (2d Cir. 1988) (modifications made to medical plans was permitted under employer's clear reservation of right to amend or terminate the plans at issue); Gallione v. Flaherty, 70 F.3d 724, 727-28 (2d Cir. 1995) (upholding the termination of a top hat plan).  Paneccesio's bald assertion that IKON could not terminate the Plan as to him is contradicted by the plain language of the Plan.  The Plan contains a clear reservation of the right to terminate the Plan, which is valid and enforceable under ERISA.  See Plan, Section 19 (IKCP 118, App. Ex. 3).

Under Section 19, IKON's Board had the right to terminate the Plan when, in its discretion, it determined that events have caused, or are likely in the future to cause, the Plan to have an adverse financial impact on IKON.  See Plan, Section 19 (IKCP 118, App. Ex. 3).  On July 21, 2000, the IKON Board of Directors exercised this discretion and acted to terminate the Plan effective December 31, 2000.  (Declaration of Walter J. Hope, Jr. ("Hope Decl.") ¶ 15, App. Ex. 1; see also Hope Dep. 68:5-16, App. Ex. 5.)

The Board determined that, as a result of the decline in interest rates, in 1999, IKON incurred an unexpected cash outlay of $2.4 million as opposed to the $1.5 million originally assumed, and a negative earnings impact of $1.3 million as compared to a positive impact of $1 million originally expected.  (Hope Decl. ¶ 17, App. Ex. 1.)  As for potential future impact, it was estimated that, for the period from 2000 through 2004, had the Plan not been terminated and assuming the Split Dollar Policies continued to achieve a 6% rate of return, IKON would have suffered a cash outlay of an additional $2.2 million per year as opposed to

$1.4 million per year as originally assumed, and a negative impact on earnings of $1 million per year as opposed to a positive $0.7 million per year as originally projected. (Hope Decl. ¶ 18, App. Ex. 1.) In addition, the diminishing number of participants contributing to the Plan that resulted from the divestitures of two subsidiaries and other employment terminations also contributed to the Plan having a negative impact on IKON. (Hope Decl. ¶ 19, App. Ex. 1.)

The Plan is explicit in its statement that, upon payment of the Termination Benefit after the Plan has been terminated, IKON shall have no other liability or obligation under the Plan. See Plan, Section 19 (IKCP 118, App. Ex. 3). On these facts, it is clear that Paneccasio received all benefits to which he was entitled under the terms of the Plan when he was paid the Termination Benefit. See Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 290 (2d Cir. 2000) ("Upon termination of the Plan, plaintiffs received repayment of the amount invested, plus interest at a compounded annual rate of 10%. The fact that the sums of money were lesser than anticipated, due to taxes or repayment of amounts borrowed, is of no moment. Plaintiffs obtained what they bargained for under the contract.").

In Holcomb, the plaintiff argued that IKON "had no right to terminate the Plan under any provision of the Plan." Holcomb Opinion and Order at 14. The District of Vermont rejected Holcomb's argument and granted IKON's motion for summary judgment, explaining that:

> Under the plain terms of the Plan, however, the administrators were permitted to terminate the Plan in its entirety "at any time it determines that proposed or pending tax law changes or other events cause, or are likely in the future to cause, the Plan to have an adverse financial impact on [IKON]." The administrators determined that a combination of factors would "negatively affect the Company's ability to fund the 1991 plan" and decided to terminate it.

Holcomb Opinion and Order at 14 (citations omitted).

As the Vermont court noted earlier in its opinion, the decision of IKON's Board to terminate the Plan "was based on the lower than expected rate of growth of the cash value of the life insurance policies purchased under the Plan, as well as a decrease in the number of participants making deferrals, 'due to a number of divestitures and terminations of employees since 1990.'" Id. at 5 (citations omitted). On this basis, the District of Vermont granted IKON's motion for summary judgment.

The Court here should also grant the IKON Defendants' motion for summary judgment on Paneccasio's ERISA claims on the basis that payment of the Termination Benefit to Paneccasio upon the Plan's termination was neither arbitrary nor capricious.[5]

### 2. Paneccasio Received Everything To Which He Was Entitled Under The Early Retirement Package.

Notwithstanding that the Plan was lawfully terminated in accordance with its terms, Paneccasio maintains that the termination of the Plan should not apply to him because he opted to retire early under the early retirement window offered to him by Unisource. (Deposition of Eugene Paneccasio ("Paneccasio Dep.") 33:15-20, App. Ex. 4.) Specifically, Paneccasio argues that, because he was granted 65% vesting in the Plan as a result of his acceptance of the early retirement window, he was entitled to payment of the Pre-Termination Benefit (the benefit payable had the Plan not been terminated) regardless of the fact that the Plan was terminated. (IKCP 90-92, App. Ex. 3.) Paneccasio again ignores the express terms of the Plan, as they have existed since the time he elected to participate in the Plan. Under the Plan's very specific definition of the term "vest" set forth in Section 5, whether a participant is vested determines

---

[5]    The court in Holcomb granted summary judgment without addressing the specific question of whether the arbitrary and capricious standard of review applied on the basis that, "even under the more stringent, de novo standard of review, the decision to terminate was permitted under the plain language of the Plan." Holcomb Opinion and Order at 14.

only whether that participant will be eligible to continue to participate in the Plan upon his

termination of employment. (IKCP 114-15, App. Ex. 3.) To be "vested" in the 1991 Plan does

not mean that the participant is eligible to commence benefits as defined by Section 6.

(IKCP 115, App. Ex. 3.)

> As the court in Holcomb explained,
>
> whether Holcomb was vested or not is not the issue. Vesting would have
> determined what benefits Holcomb would have received upon retirement or age
> 65, even if he left the company, if the Plan had continued. The termination clause
> in the Plan governed the benefits he would receive in the event that the Plan was
> terminated, even if he had been fully vested at the time of termination.

Holcomb Opinion and Order at 4 n. 1 (citations omitted).

The same is true for Paneccasio. That he was given accelerated partial vesting at

65% determines the benefit, if any, he would have received upon attaining age 65 only if the

Plan had continued to exist. After IKON's Board of Directors determined that continuing the

Plan would cause an adverse financial impact on IKON and invoked the Plan's Termination

Provision, however, the benefit paid to Paneccasio was correctly determined based upon the

terms of the Termination Provision. Paneccasio was, thus, properly paid the Termination

Benefit.

> **3.     Paneccasio Cannot State A Breach of Fiduciary Duty Claim Against
>         the IKON Defendants.**
>
> > **a.     Top Hat Plans Are Exempt From ERISA's Fiduciary Duty
> >         Provisions.**

An employee benefit plan that is unfunded and maintained by an employer

primarily for the purpose of providing deferred compensation for a select group of management

or highly compensated employees is commonly referred to as a "top hat plan." Demery, 216

F.3d at 286-87. Top hat plans are expressly exempted from most of ERISA's substantive

requirements. See ERISA Section 201(2), 29 U.S.C. § 1051(2) (exempting such plans from

ERISA's participation and vesting and requirements); ERISA Section 301(a)(3), 29 U.S.C.

§ 1081(a)(3) (exempting such plans from ERISA's funding requirements); ERISA Section

401(1), 29 U.S.C. § 1101(a)(1) (exempting such plans from ERISA's fiduciary responsibility

requirements); 19 C.F.R. § 2520.104-23 (exempting such plans from most of ERISA's reporting

requirements).

       Congress exempted top hat plans from these substantive requirements, including

ERISA's fiduciary duty provisions, because it determined that an employer's higher level

employees "have sufficient influence within the institution to negotiate arrangements that protect

against the diminution of their expected pensions." Gallione v. Flaherty, 70 F.3d 724, 728 (2d

Cir. 1995) (citing DOL Office of Pension & Welfare Benefit Programs Opinion 90-14A, 1990

WL 123933, at *1 (May 8, 1990) (stating that "in providing relief for top hat plans from the

broad remedial provisions of ERISA, Congress recognized that certain individuals by virtue of

their position or compensation level, have the ability to affect or substantially influence . . . the

design and operation of their deferred compensation plan. . . .")).

       Because top hat plans are not subject to ERISA's fiduciary duty provisions, courts

have determined that "there is no cause of action for breach of fiduciary duty involving a top hat

plan." Goldstein v. Johnson & Johnson, 251 F.3d 433, 443 (3d Cir. 2001) (citation omitted).

See also Demery, 216 F.3d at 290 (because top hat plans are not subject to ERISA's fiduciary

duty provisions, the lower court properly dismissed the plaintiffs' breach of fiduciary duty

claim); Campbell v. Computer Task Group, Inc., No. 00 Civ. 9543, 2001 WL 815575 at *3

(S.D.N.Y. July 19, 2001) (dismissing a breach of fiduciary duty claim related to a top hat plan

because "the exemption of 'top hat' plans from the fiduciary obligations of ERISA . . . leads to

the conclusion that no [fiduciary] obligations exists in this case.").

The Plan was a top hat plan in that it was "intended to constitute an unfunded deferred compensation arrangement for a select group of management or highly compensated employees." See Plan, Section 1 (IKCP 113, App. Ex. 3). Because there was no fiduciary relationship between Paneccasio and the IKON Defendants, Paneccasio cannot sustain a breach of fiduciary duty claim against them and judgment should in favor of the IKON Defendants on Paneccasio's breach of fiduciary duty claim.

        **b.**    **Termination Of A Plan Is A Settlor Function That Cannot Give Rise to a Claim for Breach of Fiduciary Duty.**

Paneccasio cannot state a breach of fiduciary duty claim against the IKON Defendants in any event because termination of a plan is a settlor, not a fiduciary, function. Fiduciary duty rules apply only when a fiduciary engages in fiduciary functions. 29 U.S.C. § 1104(a); Flanigan v. General Electric Co., 242 F.3d 78, 87 (2d Cir. 2001).

The United States Supreme Court has held consistently that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [employee benefit] plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999) (internal quotations omitted). Because termination of a plan is not a fiduciary function, it does not implicate ERISA's fiduciary duty provisions. See also Tourangeau v. Uniroyal, Inc., 189 F.R.D. 42, 46 (D. Conn. 1999) ("It is well settled that an employer . . . does not act as a fiduciary when it amends, modifies, [or] terminates . . . [a] plan") (citing Lockheed Corp. v. Spink, 517 U.S. 882, 891 (1996)).

Paneccasio's breach of fiduciary duty claim is based upon the allegation that the IKON Defendants improperly terminated the Plan. (Complaint § 11, ¶ 22.) Because termination

of a plan is a settlor function that does not implicate fiduciary duties, the Court should enter

judgment in the IKON Defendants' favor on this basis as well.

    **4.    Paneccasio Has Failed to State An Estoppel Claim Against The IKON Defendants.**

To establish an equitable estoppel claim under the federal common law developed

under ERISA, a plaintiff must allege in his complaint that (1) the defendant made a material

representation; (2) he reasonably relied on that representation; and (3) he was injured because of

his reliance on the representation. Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993); see also

Bonovich v. Knights of Columbus, 146 F.3d 57, 62-63 (2d Cir. 1998) (affirming dismissal of

estoppel claim because plaintiff failed to establish all of the required elements) (citing Schonholz

v. Long Island Jewish Medical Ctr., 87 F.3d 72, 78-79 (2d Cir. 1996)).  To prevail on an

equitable estoppel theory under Second Circuit law, a plaintiff must also prove the existence of

extraordinary circumstances. Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140,

151 (2d Cir. 1999) (holding that an ERISA plaintiff seeking to establish an estoppel claim must,

in addition to proving the basic estoppel elements, prove the existence of "extraordinary

circumstances").

Paneccasio testified that he relies on the 1991 Plan, the 1994 early retirement

window, and the letter informing him of the termination of the Plan as the grounds for his

assertion that he was misled into believing that the Plan could not be terminated as to him.

(Paneccasio Dep. 33:15-34:12; 152:6-14, App. Ex. 4.) There is simply nothing in these

documents, however, that can be construed as making such a representation.

As discussed above, before he elected to participate in the Plan, Paneccasio was

apprised of the fact that the Board of Directors of IKON could terminate the Plan under certain

circumstances. Paneccasio admitted that he received a copy of the Plan when he was initially

offered the opportunity to participate and that he carefully read and understood the terms of the

Plan before electing to participate. (Paneccasio Dep. 31:16-25; 32:10-12; 33:8-14; 34:13-23,

App. Ex. 4.)  Thereafter, the 1994 early retirement window did nothing more with respect to the

1991 Plan than offer Paneccasio accelerated partial vesting, as the term "vest" is defined by the

Plan. (IKCP 168, App. Ex. 3.)[6]  After Paneccasio accepted the early retirement window, he was

treated as 65% vested – he was permitted to continue to participate in the Plan even after his

termination of employment.  (IKCP 76-79, 103, App. Ex. 3.)  If he had not been treated as

vested, his participation in the Plan would have ceased and he would have been paid the amount

of his deferrals, without interest, at the time he retired.  See Plan's Vesting Provision, Section 5

(IKCP 114-15, App. Ex. 3; see also Hope Dep. 75:3-17, App. Ex. 5).  Nothing in the early

retirement window, however, abrogated the right of IKON's Board to invoke the Termination

Provision.  The Board acted properly within its discretion to terminate the Plan effective

December 31, 2000, and Paneccasio was correctly paid the Termination Benefit.  See Holcomb

Opinion and Order at 5 & 14.

      Simply put, nothing in the Plan, the early retirement window, or the letter

informing Paneccasio of the termination of the Plan contains any representation that the Plan

could not be terminated as to Paneccasio.  Consequently, he has failed to establish the first

essential element of equitable estoppel.  On these facts, Paneccasio cannot establish the second

or third element of estoppel as he could not have reasonably relied, to his detriment, on a

representation that was never made to him.

---

[6]    The brochure describing the 1994 early retirement window directed employees to the terms of the plan documents and stated specifically that, "[i]n case of any dispute, the official legal documents or contracts will govern over this brochure." (IKCP 172, App. Ex. 3.)

Finally, Paneccasio cannot make the required showing of "extraordinary circumstances" necessary for his estoppel claim. Stovall v. First Unum Life Ins. Co., 20 Fed. Appx. 47, 2001 WL 1178601 (2d Cir. Oct. 3, 2001) (the concept of equitable estoppel goes beyond a showing of reasonable reliance); see also Berg v. Empire Blue Cross & Blue Shield, 105 F. Supp. 2d 121, 130 (E.D.N.Y. 2000) ("ambiguity in a plan document as to whether or not benefits vest, or a promise on behalf of the employer that the benefit is included, is insufficient alone, or when viewed conjunctively, to establish extraordinary circumstances."). One court, for example, has held that the doctrine of estoppel is not available in an ERISA case where plaintiffs are not eligible for benefits under the terms of plan because such plaintiffs could not demonstrate extraordinary circumstances. Edwards v. Akzo Nobel, Inc., 193 F. Supp. 2d 680 (W.D.N.Y. 2001).

> The court in Edwards explained that:
>
>> plaintiffs' claims seek to obtain a level of benefits to which they are simply not entitled under the terms of the Plan. At the time at which they ceased to be employees of Akzo, plaintiffs had not met the Plan criteria for early retirement benefits, and nothing that happened afterwards altered that fact. Under the terms of the purchase agreement between Akzo and Cargill, plaintiffs' rights under the Plan froze at the time of the transfer of the Watkins Glen facility to Cargill, which assumed no liability under the Plan. Although plaintiffs may understandably feel aggrieved at having been terminated by Cargill a short time later, that does not mean that, for purposes of calculating their level of benefits, the terms of the Plan can be ignored or rewritten. The Plan administrator's determination that plaintiffs were deemed to have been terminated from Akzo's employ on April 25, 1997, the date upon which the Atkins Glen facility was transferred from Akzo to Cargill, cannot fairly be characterized as arbitrary or capricious, and defendants are therefore entitled to summary judgment.

Id.

Similarly, Paneccasio's subjective feeling that Defendants "reneged" on their alleged promises when the Plan was terminated cannot change the fact that the IKON Defendants acted in accordance with the terms of the Plan and he was paid all of the benefits to which he

was entitled. Accordingly, the IKON Defendants are entitled to judgment as a matter of law on Paneccasio's ERISA claims.

**C.    Paneccasio's ADEA Claim Must Also Be Dismissed As A Matter of Law.**

Paneccasio also alleges that, in terminating his benefits under the Plan, IKON, Unisource, and Georgia-Pacific discriminated against him because of his age in violation of the ADEA.[7] (Complaint § IV, ¶¶ 20-23.) On December 31, 2000, the effective date of the Plan's termination, IKON was not Paneccasio's employer. Accordingly, judgment as a matter of law should be granted in favor of the IKON Defendants on Paneccasio's age discrimination claim. In addition, because Paneccasio has failed to establish a prima facie case, the IKON Defendants' motion for summary judgment should be granted on that basis as well. Finally, even assuming the existance of a prima facie case, the decision of IKON's Board of Directors to terminate the Plan was based on a legitimate, non-discriminatory reason, which is also fatal to Paneccasio's ADEA claim.

**1.    IKON Was Not Paneccasio's Employer At The Time Of Plan Termination.**

The ADEA prohibits *employers* (and prospective employers in hiring situations) from discriminating against *employees* on the basis of age. 29 U.S.C. § 623. Thus, a plaintiff cannot state an ADEA claim against a defendant unless that defendant was his employer or prospective employer. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 509 (2d Cir.

---

[7]    To the extent that Paneccasio purports to assert a claim of age discrimination on the basis of the 1994 early retirement window, such claim must fail for two reasons. First, the offer by an employer of voluntary early retirement is expressly permitted by the ADEA. See, e.g., Auerbach v. Board of Educ, 136 F.3d 104 (2d Cir. 1998) (holding that early retirement incentive plan was lawful under the ADEA). Second, such a claim is barred by the statute of limitations as there is no evidence in the record that supports Paneccasio's claim of fraudulent concealment. Ruling on Motions to Dismiss at 5-7.

1994) (affirming dismissal of plaintiff's ADEA claim because the defendant was not the

plaintiff's employer).  Furthermore, as this Court noted in its Ruling on Motions to Dismiss:

> In the employment context, liability may attach to an affiliated corporation if the
> plaintiff can demonstrate that there are "sufficient indicia of an interrelationship
> between the immediate corporate employer and the affiliated corporation to
> justify the belief on the part of an aggrieved employee that the affiliated
> corporation is jointly responsible for the acts of the immediate employer."
>
> The Second Circuit has established a four-part test indicating what a plaintiff must
> demonstrate in order to establish that corporations are related in such a manner:
> "(1) interrelation of operations, (2) centralized control of labor relations,
> (3) common management, and (4) common ownership or financial control."

Ruling at 7 (citations omitted).

On December 31, 2000, neither IKON nor any other of the IKON Defendants was

Paneccasio's employer.  (Hope Decl. ¶ 23, App. Ex. 1.)  In addition, none of the IKON

Defendants were affiliated or interrelated with either Unisource or Georgia-Pacific.  Unisource

was spun off from Alco, IKON's predecessor on January 1,  1997 and has been an entity

completely separate and unrelated from Alco and IKON since then.  (Hope Dep. 14:5-24, App.

Ex. 5; Hope Decl. ¶ 22, App. Ex. 1.)  IKON and Georgia-Pacific, as Paneccasio has admitted, are

two completely unrelated corporate entities.  (Hope Decl. ¶ 22, App. Ex. 1; Paneccasio Dep.

155:13-17, App. Ex. 4.)  As of the effective date of the Plan termination, there was no centralized

control of labor relations between IKON, on the one hand, and Unisource and Georgia-Pacific,

on the other.  (Hope Decl. ¶ 22, App. Ex. 1.)  Consequently, there is no legal basis for the claim

of age discrimination Paneccasio has asserted against the IKON Defendants because there was

no employment relationship between IKON and Paneccasio on December 31, 2000.

### 2.    Even Assuming IKON Was Paneccasio's Employer, Paneccasio's ADEA Claim Fails On The Merits.

Even if the Court were to determine that IKON was Paneccasio's employer for

some relevant period of time, Paneccasio's age claim must fail on the merits because he has not

sustained his burden of showing that he was discriminated against on the basis of his age. The

ADEA states that it is unlawful for an employer "to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

§ 623(a)(1). The Second Circuit has stated that ADEA claims are to be analyzed under the same

burden shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, et seq. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d

456, 466 (2d Cir. 2001).

> To establish a prima facie case of age discrimination, a plaintiff must show four
> things: (1) he is a member of the protected class; (2) he is qualified for his
> position; (3) he has suffered an adverse employment action; and (4) the
> circumstances surrounding that action give rise to an inference of age
> discrimination.

Id.

> Under this framework, once a plaintiff establishes a prima facie case, the burden
> shifts to the defendant to articulate a legitimate, non-discriminatory reason for its
> actions. If the defendant is successful, the plaintiff must prove by a preponderance
> of the evidence that the defendant's proffered reason was pretextual, and the real
> reason was instead unlawful discrimination.

Patterson v. J.P. Morgan Chase & Co., 2004 WL 1920215 (S.D.N.Y. 2004) (citing Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224-25 (2d Cir. 1994)).

### a. Paneccasio's Prima Facie Case

The only support Paneccasio provides for his claim that he was discriminated

against on account of his age is that the Plan was terminated a year before he turned age 65.

(Paneccasio Dep. 138:22-140:14, App. Ex. 4.) This, by itself, is insufficient to give rise to an

inference of age discrimination. See, e.g. Patterson, 2004 WL 1920215 at 5 ("Aside from

pointing out that she was the oldest person in the office, Patterson does not put forward any other

evidence of age discrimination. Without additional evidence, Patterson has not met her prima

facie burden of production to sustain her charge against summary judgment.") Moreover,

Paneccasio points to no younger Plan participant who was treated differently because he cannot.

All Plan participants who were similarly situated to Paneccasio were treated in exactly the same

manner and in accordance with the Plan's terms. (Hope Decl. ¶ 21, App. Ex. 1.) See Devlin v.

Transportation Communications Int'l Union, 175 F.3d 121 (2d Cir. 1999) (upholding district

court's decision that the elimination of death benefit fund, in its entirety, did not violate the

ADEA because plaintiffs could not show discrimination, much less unlawful discrimination – the

fund was terminated as to all members and retirees, not just the older constituents). The mere

fact that the Plan was terminated one year before Paneccasio turned age 65 is insufficient to give

rise to an inference of age discrimination. Paneccasio has, therefore, failed to make out a prima

facie case.

**b.     The IKON Defendants' Non-Discriminatory Reason for Terminating the Plan**

Even assuming Paneccasio had met his prima facie burden, the record evidence

shows that the decision of IKON's Board to terminate the Plan was based on its determination

that continuing the Plan would cause an adverse financial impact IKON. (Hope Decl. ¶ 20, App.

Ex. 1; see also Hope Dep. 47:6-48:16, 68:5-16, App. Ex. 5.) As discussed above, the District of

Vermont in Holcomb already has upheld the Board's decision to terminate of the Plan. The

court found that the decline in interest rates and the decrease in the number of participants

making deferrals provided a sufficient basis for the Board to invoke the Termination Provision.

Holcomb Opinion and Order at 5 & 14-16. This adverse financial impact was, in fact, the sole

basis for the Board's actions in terminating the Plan. (Hope Decl. ¶ 20, App. Ex. 1; see also

Hope Dep. 47:6-48:16, 68:5-16, App. Ex. 5.) Because Paneccasio's age was not a motivating

factor in the termination of the Plan, his ADEA claim is deficient as a matter of law and the Court should grant the IKON Defendants' Motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the IKON Defendant respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor and against Plaintiff Eugene Paneccasio.

Respectfully submitted,


Kay Kyungsun Yu
Federal Bar No. ct13440
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4188 Telephone
(215) 689-4515 Facsimile

OF COUNSEL:                          Joseph J. Costello
                                     Morgan Lewis & Bockius LLP
                                     1701 Market Street
                                     Philadelphia, PA 19103-2921
                                     (215) 963-5295

LOCAL COUNSEL:                       Robert L. Wyld
                                     Federal Bar No. ct04333
                                     Patrick M. Fahey
                                     Federal Bar No. ct13872
                                     Shipman & Goodwin
                                     One Constitution Plaza
                                     Hartford, Connecticut 06103
                                     (860) 251-5620/5824

## CERTIFICATE OF SERVICE

I, Kay Kyungsun Yu, hereby certify that on October 29, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of the IKON Defendants' Motion for Summary Judgment was served via First-Class Mail upon the following:

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT  06880

Rayne Rasty, Esq.
Georgia-Pacific Corporation
133 Peachtree Street NE
Atlanta, GA  30303-1847

Felix J. Springer, Esq.
Jennifer L. Sachs, Esq.
Day, Berry & Howard
CityPlace 1
Hartford, CT  06103-3499


Kay Kyungsun Yu