U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2004 SEP 13 PM 2 21

CLERK
BY _____
DEPUTY CLERK

Norman Holcomb,
    Plaintiff,

v.                      File No. 2:03-CV-106

IKON Office Solutions, Inc.,
    Defendant.

## OPINION AND ORDER
(Papers 28, 39, & 40)

Plaintiff Norman Holcomb brought this action alleging that his deferred compensation plan was wrongfully terminated by Defendant IKON Office Solutions, Inc. ("IKON"). IKON now moves for summary judgment, arguing that the termination was permitted under the language of the plan.

For the reasons set forth below, IKON's motion (Paper 28) is GRANTED.

### Procedural History

Holcomb originally brought this action in Rutland Superior Court on March 11, 2003. In the complaint, Holcomb alleged that IKON wrongfully terminated his deferred compensation plan ("the Plan"). He also alleged that, despite IKON's assertions to the contrary, the termination was not authorized under the terms of the Plan. Holcomb

attached a copy of the Plan to the complaint and incorporated it by reference.

On April 3, 2003, IKON removed this case to federal court. In its Notice of Removal, IKON asserted that the matter was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. IKON therefore argued that any state law claims were completely preempted by ERISA, and that the only claim asserted by Holcomb required interpretation of the Plan, a matter governed by ERISA. IKON now moves for summary judgment, arguing that its decision to terminate the Plan was permitted.

### Factual Background

The underlying facts of this action are not in dispute. In 1990, Holcomb was employed by Alco Standard Corporation. In the fall of that year, Alco Standard established the Plan to permit certain eligible employees to defer some of their income, in order to provide supplemental income to those employees during their retirement. (Paper 30, ¶¶ 1-4.) Holcomb was eligible for the Plan, and elected to participate. (Id. at ¶ 18.) In January 1997, Alco Standard changed its name to IKON Office Solutions, and the Plan was

2

amended to reflect this change. (Id. at ¶ 2.)

Participants in the Plan made monthly contributions to the Plan from their salaries over the course of either five or ten years. (Paper 31, Exhibit, at IKH 11.) The cost of premiums for a life insurance plan was also taken each month from each participant's salaries, until the participant either reached the age of 65 or retired. (Id.) The Plan contributions were used to buy one or more life insurance policies pursuant to a "split-dollar agreement." (Id. at 12.) Under the split-dollar agreement, the benefits and costs associated with the policies were split between IKON and the participant. (Id.) The plan was not funded by IKON; instead, the payments of the participants and the benefits under the life insurance policies were supposed to fund it. (Id. at 13.)

A participant became vested in the Plan if he remained a full-time employee with IKON for ten years after January 1, 1991. (Id. At 12.) Upon the later of a vested participant's turning 65 or retiring, he would receive payments for 120 months and ownership of a fully funded life insurance policy. (Id.) Holcomb elected to participate under the third option, and would have received $22000 per

year for ten years and a $140,000 cash value life insurance policy with a paid-up death benefit of $550,000, if the Plan had not terminated.[1] (Id. at 25, 65.)

The Plan contained a provision that allowed the Board of Directors to terminate the Plan in its entirety "at any time it determines that proposed or pending tax law changes or other events cause, or are likely in the future to cause, the Plan to have an adverse financial impact on [IKON]." (Paper 6, Exhibit A, ¶ 20.) In the event of termination under this provision, IKON was to pay participants in the Plan one of two amounts. (Id.) If the participant had not begun receiving benefits under the Plan, IKON would make a lump sum payment of the value of all of the participant's deferrals plus interest, which was compounded annually at the rate of 6% per year. (Id.) If the participant had begun receiving benefits, IKON would make a lump sum payment of all the amounts due thereafter, calculated in accordance with an "Acceleration of Benefits" clause. (Id.) Under the

---

[1] Holcomb emphasizes the fact that the Plan terminated one minute before the elapse of ten years' time from its inception. (Paper 33 at 1.) Although it is true that Holcomb (and other participants) would have been fully vested in the plan the day after it was terminated, whether Holcomb was vested or not is not the issue. Vesting would have determined what benefits Holcomb would have received upon retirement or age 65, even if he left the company, if the Plan had continued. (Paper 31, Exhibit at IKH 11.) The termination clause in the Plan governed the benefits he would receive in the event that the Plan was terminated, even if he had been fully vested at the time of termination. (Id. at 23.)

4

plan, participants began receiving benefit payments at the later of age 65 or retirement. (Id. at ¶ 6.)

On July 21, 2000, IKON's Board of Directors decided to terminate the Plan under the termination provision. (Paper 30, ¶ 20.) That decision was based on the lower than expected rate of growth of the cash value of the life insurance policies purchased under the Plan, as well as a decrease in the number of participants making deferrals, "due to a number of divestitures and termination of employees since 1990." (Id. at 59-62.) Because of these occurrences, the Board determined that the Plan would have an adverse financial impact on IKON. (Id.) On December 31, 2000, the Plan terminated, and Holcomb received benefits in accordance with the Plan's termination provision. (Id. at ¶ 27-28.) Holcomb was not yet 65 when the Plan was terminated, and he received a lump sum payment of his deferrals plus interest, totaling approximately $66,931.64. (Id. at ¶¶ 29-34; Paper 34, ¶6.)

### Discussion

1. Motion to Strike

As an initial matter, Holcomb has filed motions to strike IKON's Reply Memorandum (Paper 37) and IKON's

Response to the Motion to Strike (Paper 40). Holcomb argues that IKON violated Local Rule 16.3(k)(1) by attaching copies of the ENE statements to its reply memorandum, and by discussing the contents of the statements in its response.

Local Rule 16.3(k)(1) provides "[a]ll written and oral communications made in connection with or during the ENE process are confidential. The ENE process is treated as a settlement negotiation under Fed. R. Evid. 408." Rule 408 provides that such statements are not admissible into evidence "to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408. Rule 408 does not require exclusion "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Id.

In response to IKON's motion for summary judgment, Holcomb argues that IKON has waived its defense of ERISA preemption, and as such ERISA does not apply to this cause of action. Holcomb asserts that he was not on notice that IKON would be asserting such a defense, and argues that ERISA does not apply to this action. (Paper 33 at 1-3.) He also asserts that he has never had a chance to conduct

6

discovery with an eye toward having the "arbitrary and capricious" standard of review under ERISA apply in this case. (Id. at 13.)

Holcomb is correct that the defense of ERISA preemption may be waived if not asserted in a timely manner. Saks v. Covey, 316 F.3d 337, 349-51 (2d Cir. 2003). Even if the defense is not timely raised, however, "a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." Id. at 350-51. In such cases, the Court treats the motion for summary judgment as a motion to amend. Id.

IKON submitted the ENE statements with its reply motion to show both that Holcomb had always treated this claim as arising under ERISA, thus negating IKON's need to assert a preemption defense, and that Holcomb had ample opportunity to conduct the necessary discovery, showing a lack of prejudice. (Paper 37 at 4-6.) Although submission of ENE statements must be the exception rather than the rule, in this case, the submission was not improper. If ERISA does not govern this claim, the statements are necessary to show

7

the required lack of prejudice to permit amendment of the defense of preemption. As will be seen, the Court did not need to reach this issue, and has not relied on the statements in reaching its decision. As such, Holcomb's motions to strike will be denied.

2. Motion for Summary Judgment

IKON moves for summary judgment, arguing that the claim is governed by ERISA, and that the decision to terminate the Plan must be reviewed under the arbitrary and capricious standard. In the alternative, IKON argues that, even under a de novo standard of review, the decision to terminate the Plan should be upheld. Holcomb counters that IKON has waived the defense of ERISA preemption, and as such, state law applies to his claim.

A. Summary Judgment Standard

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), or "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Matsushita Elec. Indus.

8

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" O'Hara v. Weeks Marine, Inc., 294 F.3d 54, 61 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of showing an absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). Once that burden is met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." Winter v. United States, 196 F.3d 339, 346 (2d Cir. 1999)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). As to any claim or essential element for which the non-moving party bears the burden of proof at trial, the non-moving party must make a showing sufficient to establish

9

the existence of that claim or element. Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998)(citing Celotex, 477 U.S. at 324; DiCola v. Swissre Holding, Inc., 996 F.2d 30, 32 (2d Cir. 1993)). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

    B.  ERISA

The Court must first decide whether ERISA applies to this action. The parties agree that the Plan was a top hat plan[2], and was governed by certain provisions of ERISA. Holcomb argues, however, that IKON has waived the right to litigate this action under ERISA. He argues that the initial complaint asserted a general claim based on the termination of the plan, but did not specify whether the complaint was brought under federal or state law. IKON then removed the case from state court, asserting federal question jurisdiction as the basis for removal. Holcomb

---

[2] A top hat plan is unfunded, and "is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Such plans are "excluded from ERISA's vesting, funding, and fiduciary responsibility requirements because Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations." Gallione v. Flaherty, 70 F.3d 724, 727 (2d Cir. 1995).

10

argues, however, that IKON's failure to assert the affirmative defense of ERISA preemption requires that the case be litigated under state law.

As already noted, ERISA preemption is an affirmative defense, which may be waived if not raised in a timely fashion. Saks, 316 F.3d at 349-51. ERISA preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." Aetna Health Inc., v. Davila, 124 S. Ct. 2488, 2495 (2004). In addition, for the purposes of removal, ERISA converts a state-law claim that is within the scope of the civil enforcement provisions of ERISA into a federal claim. Id.

Holcomb's complaint stated only a general cause of action based on wrongful termination of the Plan. There were no specific state-law or federal-law claims enumerated. In its Notice of Removal, IKON cited ERISA as the basis for federal question jurisdiction. (Paper 1.) IKON also asserted that any remaining state law claims were preempted by ERISA Sections 502(a) and 514(a), 29 U.S.C. §§ 1132(a) and 1144(a). (Id.) Holcomb did not contest removal, and he cannot now argue that IKON has waived its right to litigate the claim in the complaint under ERISA. The act of removing

11

the case converted the claim into one under ERISA. Absent additional state-law claims, there was no need for IKON to assert the defense of ERISA preemption. Even assuming the complaint asserted a state-law claim for breach of contract that was not preempted, however, Holcomb's claims fail on the merits.

C. Merits

"[A] denial of benefits challenged under [ERISA Section 502(a)(1)(A), 29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. V. Bruch, 489 U.S. 101, 115 (1989). When the plan grants such discretionary authority, however, the denial must be reviewed under an arbitrary and capricious standard. Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 763 (2d Cir. 2002). The Plan in this case grants the Retirement Plans Committee and the Plan Administrator discretion to administer the plan in accordance with its terms, and to interpret those terms when necessary. (Paper 6, Exhibit A at 5.) As such, the arbitrary and capricious standard appears to apply in this

12

case. As Holcomb notes, however, the Second Circuit has not yet held that the arbitrary and capricious standard of review applies to top hat plans. Both parties agree that this is a top hat plan.

"Top hat" plans are exempt from certain provisions of ERISA, including vesting provisions and funding requirements. Gallione v. Flaherty, 70 F.3d 724, 728-29 (2d Cir. 1995). In Gallione, the Second Circuit recognized that the special nature of top hat plans meant that some state-law claims might not be preempted by ERISA. Id. at 729. The Second Circuit declined to reach that issue, however, because all of the plaintiff's claims failed under state law as well. Id. The Second Circuit's recognition that top hat plans are different from the usual plan under ERISA may mean that it would not apply the arbitrary and capricious standard of review to such cases, but it has not yet decided the issue. The Third Circuit has held that the special nature of these plans means that courts need not defer to the decisions of plan administrators, and instead may exercise de novo review over decisions to deny benefits. Goldstein v. Johnson & Johnson, 251 F.3d 433, 443-44 (3d Cir. 2001). In contrast, other courts have held that the

13

arbitrary and capricious standard of review does apply to top hat plans. See, e.g., Olander v. Bucyrus-Erie Co., 187 F.3d 599, 606-07 (7th Cir. 1999). This Court need not decide which standard applies to top hat plans generally, though, because even under the more stringent, de novo standard of review, the decision to terminate was permitted under the plain language of the Plan.

Holcomb argues that IKON "had no right to terminate the Plan under any provision of the Plan." (Paper 6, ¶ 13.) Under the plain terms of the Plan, however, the administrators were permitted to terminate the Plan in its entirety "at any time it determines that proposed or pending tax law changes or other events cause, or are likely in the future to cause, the Plan to have an adverse financial impact on [IKON]." (Paper 6, Exhibit A, ¶ 20.) The administrators determined that a combination of factors would "negatively affect the Company's ability to fund the 1991 plan" and decided to terminate it. (Paper 31, IKH 58.)

Holcomb disputes that a decline in interest rates can be an event under the termination clause. He argues that, because interest rates always fluctuate over time, a decline in interest rates is merely the status quo, and not an

14

event. In support of his argument, he cites <u>Burnham Corporation v. Commissioner of Internal Revenue</u>, 878 F.2d 86 (2d Cir. 1989), in which the Second Circuit held that an individual's continued survival, as opposed to her demise, was not an "event" but merely the continuation of the status quo. <u>Id.</u> at 88. The Second Circuit explained that "[a]n 'event,' as we understand that word, is ordinarily something which marks a change in the status quo." <u>Id.</u> Webster's Dictionary defines "event" as "a happening or occurrence, esp. when important." <u>Webster's New World Dictionary</u>, 470-71 (3d College ed. 1988). Unlike a person's continued survival, a change in the interest rate, even though common, is an occurrence, not merely a continuation of the status quo. As such, IKON's decision to terminate the Plan was permitted by its plain terms.[3]

Holcomb attempts to create an issue of fact by citing to separate litigation, in which IKON asserted only one of these reasons as the underlying factor in the decision to terminate the Plan. He presents no evidence that the Board did not rely on both factors in making its decision,

---

[3] Because the termination was permitted by the plain language of the Plan, Holcomb's claims fail even if they are based on a breach of contract theory rather than ERISA.

15

however. He also presents no evidence, other than bare assertions, that either of these reasons was not sufficient justification for termination under the terms of the Plan. As such, no genuine issue of material fact remains, and summary judgment is appropriate.

### Conclusion

For the foregoing reasons, IKON's motion for summary judgment (Paper 28) is GRANTED and Holcomb's motions to strike (Paper 39 & 40) are DENIED.

Dated at Burlington, in the District of Vermont, this 13 day of September, 2004.

Jerome J. Niedermeier
United States Magistrate Judge

AO 72A
(Rev.8/82)