IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM E. CALLAHAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:01CV1205 (CFD) |
| | : | |
| UNISOURCE WORLDWIDE, INC., et al. | : | |
| | : | |
| Defendants | : | |
| and | | |
| EUGENE PANECCASIO | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:01CV2065(CFD) |
| | : | |
| UNISOURCE WORLDWIDE, INC., et al. | : | |
| | : | |
| Defendants | : | October 29, 2004 |
| | : | |

### DECLARATION OF WALTER J. HOPE, JR.

I, Walter J. Hope, Jr., do depose and state pursuant to 28 U.S.C. § 1746 as follows:

1. I am employed by IKON Office Solutions, Inc. ("IKON") as Director – Risk Management. I was the Plan Administrator for the IKON Office Solutions, Inc. 1991 Deferred Compensation Plan, formerly known as the Alco Standard Corporation 1991 Deferred Compensation Plan (the "Plan").

2. I served in the capacity of Plan Administrator for the Plan from January 1, 1997 to December 31, 2000. Prior to the time, William M. Bauer was the Plan Administrator.

3. The Retirement Plans Committee (the "Committee") was vested with the authority to administer the Plan in accordance with its terms.

4. On or about September 12, 1990, Alco Standard Corporation ("Alco") established the Alco Standard Corporation 1991 Deferred Compensation Plan.

5. The Plan was intended to constitute an unfunded deferred compensation arrangement for a select group of management or highly compensated employees. Such plans are commonly referred to as "top hat plans."

6. On or about January 23, 1997, Alco changed its name to IKON and the Plan subsequently was amended to change all references from Alco Standard Corporation to IKON Office Solutions, Inc.

7. Participation in the Plan was offered to a small group of Alco's highly compensated employees.

8. The benefits furnished under the Plan were in addition to, not in lieu of, other retirement benefits provided under IKON's traditional pension plan.

9. Unisource Worldwide, Inc. ("Unisource") was a subsidiary of Alco until December 31, 1996.

10. Effective January 1, 1997, Alco spun off Unisource and it became a separate corporate entity unrelated to Alco.

11. In July 1999, Georgia-Pacific Corporation ("Georgia-Pacific") acquired Unisource.

12. Eugene Paneccasio and William E. Callahan were employed by Unisource.

13. Mr. Paneccasio terminated his employment with Unisource effective March 31, 1994, when he voluntarily accepted an early retirement window offered by Unisource.

14. Mr. Callahan terminated his employment with Unisource effective December 31, 1998, and entered into a separation agreement with Unisource.

15. On July 21, 2000, in accordance with the termination provision set forth in Section 19 of the Plan, IKON's Board of Directors took action to terminate the Plan effective December 31, 2000.

16. In 1999, the Split Dollar Policies had a rate of return of approximately 6% per year, down from the 9% per year originally contemplated at the time the Plan was first established in 1991.

17. As a result, a cash outlay of $2.4 million was required for the Plan as opposed to the $1.5 million originally assumed, and there was a negative earnings impact of $1.3 million as opposed to the originally expected positive earnings impact of $1 million.

18. It was estimated that, for the period from 2000 through 2004, had the Plan not been terminated and assuming the Split Dollar Policies continued to achieve a 6% rate of return, IKON would have suffered a cash outlay of an additional $2.2 million per year as opposed to $1.4 million per year as originally assumed, and a negative impact on earnings of $1 million per year as opposed to a positive $0.7 million per year as originally projected.

19. In addition to the decrease in the rate of return on the Split Dollar Policies that resulted from declining interest rates, the number of participants making deferrals and thereby contributing to the Plan diminished, which also contributed to the Plan's negative impact on IKON.

20. The decision of IKON's Board to terminate the Plan was based solely on its determination that continuing the Plan would cause an adverse financial impact IKON.

21. All Plan participants who were similarly situated were treated in exactly the same manner in accordance with the Plan's terms.

22. At the time the Plan was terminated, effective December 31, 2000, and at all times thereafter, as entities completely separate and unrelated to IKON, neither Unisource nor Georgia-Pacific has any interrelation of operations, centralized control of labor relations, or common management with IKON. Nor does IKON have any common ownership or financial control of Unisource or Georgia-Pacific.

23. When the Plan was terminated on December 31, 2000, neither IKON nor Alco was the employer of Mr. Paneccasio or Mr. Callahan.

24. The foregoing facts are true and correct based upon my personal knowledge and knowledge obtained by me in the performance of my duties for IKON and as Plan Administrator.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Walter J. Hope, Jr.

Executed on October 28, 2004

-4-