UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE PANECCASIO, | : |
| Plaintiff, | : |
| VS. | : DOCKET NO: 3:01CV2065(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., ET AL | : <br> : <br> : |
| Defendants | : DECEMBER 24, 2004 |

**PLAINTIFF PANECCASIO'S LOCAL RULE 56(a) 2
STATEMENT IN RESPONSE TO THE
IKON DEFENDANTS' RULE 56(a) 1
STATEMENT**

Pursuant to Local Rule 56(a) 2 plaintiff Paneccasio submits the following Rule 56(a) 2 Statement:

1.   Admit that the ALCO Standard Corporation 1991 Deferred Compensation Plan established on or about September 12, 1990 changed its name to the IKON Office Solutions 1991 Deferred Compensation Plan effective November 6, 1997.  Prior to January 1, 1997 ALCO Standard Corporation owned two predominant subsidiaries

Unisource Worldwide Inc. and ALCO Office Products, Inc. (*Ex. 2, Hope. dep. pg. 12-13).*  Rourke-Eno was part of Unisource (*Ex. 2, Hope dep. pg. 12-13).*  On January 1, 1997 ALCO Standard Corporation split off from itself and Unisource Worldwide Wide, Inc. in a tax free distribution to shareholders (*Ex. 2, Hope dep. pg. 13-14).*  Unisource was spun off and ALCO Office Products, Inc. remained with ALCO Standard Corporation for several months and since there was only one operating corporation, ALCO Standard Corporation and ALCO Office Products, Inc. became one corporation known as IKON Office Solutions, Inc. (*Ex. 2, Hope dep. pg. 14-17).*

2.  Admitted to the extent set forth in the response to paragraph 1 above.

3.  Admitted.

4.  Admit that the Plan is a top hat plan, see <u>Gallione vs. Flaherty</u>, 70 F.3rd 724 (2nd Cir. 1995); <u>Carr vs. First Nationwide Bank</u>, 816 F.Supp.1476, 1492 (ND Cal. 1993).

5.  Admitted.

6.  Admitted as to language.

7.  Admitted that this is language contained in the Plan.

8.  Admitted that this is language contained in the Plan.

9.  Admitted that this is language contained in the Plan

10.  Admitted generally but not specifically with respect to plaintiff.

11. Admitted as to language.

12. Admitted.

13. Admitted.

14. Admitted as to language.

15. Admitted as to language.

16. Admitted.

17. Admitted.

18. Admitted as to language.

19. Admitted as to language.

20. Admitted.

21. Admitted that plaintiff read the Plan and Prospectus but deny that he understood the terms of the Plan before electing to participate. Bill Bauer then Director of Risk Management for ALCO Standard Corporation presented Options 1, 2 and 3 which spelled out "This is your age, what you would pay, and what you would collect at age 65" (*Ex. 6, Pltf.'s dep. pg. 31, 29-33*). Plaintiff did not consult with anyone with regard to the Plan. (*Ex. 6, Pltf.'s dep. pg. 31-33*). Paneccasio further testified that the Early Retirement Package (hereinafter ERP):

> Was an inducement to retire, and a separate amendment or employment entitlement, if you will, was written, and the 1991 Deferred Comp. was a part of that plan, and I felt that when I looked at it that this

was okay for me to do. Had that not been a part of the early retirement package, I would not have retired. I would have continued to work to age 65, at which time I would have had a larger pension benefit, as well as an insurance policy that carried a death benefit and a cash value which I felt I would need at age 65 to protect myself, my family and my wife. (*Ex. 6, Pltf.'s dep. pg. 34, Pltf's Aff. par. 1-21*)).

22. Admitted as to language.

23. Admitted.

24. Admitted that under the Split Dollar Insurance Agreement, ALCO would be the sole owner of the Universal Life Insurance Policy.

25. Admitted that Unisource was a subsidiary of ALCO Standard Corporation until December 31, 1996.

26. Admitted that effective January 1, 1997 ALCO Standard Corporation spun off Unisource, and it became a separate corporation. Deny that it was unrelated to ALCO. Georgia-Pacific through Mary Hodgins, an attorney for Georgia-Pacific expressed Georgia-Pacific's consent to the provisions related to Plan termination with respect to the 1991 Deferred Compensation Plan on or about March 13, 2000 and declared Georgia-Pacific to be successor in interest to Unisource Worldwide, (*Ex. 2, Hope dep. pg. 103-104, Ex. 10*). Georgia Pacific then agreed to conceal from Plan participants IKON's intentions in 2000 to terminate the Plan (*Ex. 13*). The

misrepresentations made to plaintiff by ALCO Standard Corporation [later known as IKON Office Solutions, Inc.] and Unisource were as follows:

> The misrepresentations that I am claiming made to me was a promise that was made to me in 1994 that I will receive these benefits as stated in the Early Retirement Package and statement that when I reached age 65, I would receive these benefits, and the benefits were accordingly written to me and stated as such; and in the year 2000, when I received the letter from IKON telling me that they were terminating the Plan, I felt that they reneged on a promise that was made to me in 1994 in which I relied on specifically took an early retirement based on my age, based on what was presented to me, and they just did not come through and reneged on the promise that was made to me back then. (*Ex. 6, Pltf.'s dep. pg. 193, Pltf.'s Aff. par. 2-21*).

27.  Admitted.

28.  Deny that IKON, Unisource and Georgia Pacific did not act in a joint and concerted effort to facilitate the termination of the IKON Plan and to conceal IKON's intentions from Plan participants.  See the response to 26 above.  Georgia Pacific, as Unisource's successor in interest, consented to the Plan termination and agreed to conceal IKON's intentions to terminate the 1991 Plan from Plan participants. *(Ex. 10-13).*

29.  Denied.  This is a mischaracterization of plaintiff's testimony.  The question posed was whether Paneccasio had any basis for saying Georgia-Pacific is

interrelated with IKON Office Solutions.  Paneccasio, a lay person, answered "Not that I know of" (*Ex. 6, Pltf.'s dep. pg. 155*).

30.  Admitted.  (*Ex. 3*).  Further Paneccasio received from ALCO and Unisource (*Ex. 4*) entitled "A Personal Look At Your Retirement".  This was prepared "especially for **EUGENE PANECCASIO…at Rourke-Eno Paper Company**."  (*Ex. 4*).  The "Personal Look" includes a specific section which states that under ALCO Standard Corporation Deferred Compensation Plan "Your total vested monthly deferred compensation benefit under all plans in which you have participated payable at age 65 for a specific period is: $3,836.50".  In fact, Paneccasio was a participant in the 1980 and the 1991 Deferred Compensation Plan, and there is no differentiation or caveat pertaining to the 1991 Plan.  His monthly benefit under the 1991 Plan was $812.50. Likewise, William Bauer, Director of Risk Management at ALCO Standard Corporation wrote to Paneccasio on April 25, 1994 advising him that by accepting the Unisource Early Retirement Window, he had retained the pre-age 65 life insurance benefit under the 1991 Plan, that ALCO will invoice him quarterly for the insurance premium and that the amount of his coverage and the quarterly premium charge for the duration of the 1994 calendar year were as follows: Amount of life insurance coverage - $450,000; quarterly premium charge $231.75. (*Ex. 5, Pltf's Aff. par. 1-21*).

31.  Admit that this was a portion of what the Early Retirement Package stated.

32.  Admit as to language.  William Bauer, the draftsman of the Benefits portion of the 1994 ERP and Administrator of the 1991 Plan from 1991 – 1997, testified that there is no reference in the ERP (*Ex. 3*), the "Personal Look" (*Ex. 4)* or his April 25, 1995 letter to plaintiff *(Ex. 5)* about either termination of the 1991 Plan or the consequences of such termination to employees who elect the Early Retirement Program. *(Ex. 1, pg. 23-24)*.

33.  Admit. See response to paragraph 30 above and Pltf's Aff. par. 1-21.

34.  Admitted with respect to this particular portion of the Plan.

35.  Denied.  If Paneccasio had known that a critical inducement to his acceptance of ALCO and Unisource's offer to him of the Early Retirement Package could be revoked after he relied upon the representations made in 1994 as to his receipt of both the Deferred Compensation and the benefits of the Split Dollar Insurance Policy, he never would have retired and therefore the accelerate vesting provisions of the Plan would never have been implicated.  See response to paragraph 30 above, *Pltf's Aff. par. 1-21*.

36.  Admitted.

37.   Denied.   Defendants seek to apply out of context the termination of employment provision of the Plan to Paneccasio.   Panecassio would never have retired from his employment if he had known that the Deferred Compensation and the benefits of the Split Dollar Insurance Policy could be revoked after he accepted the Early Retirement window by retiring.   See response to 30 above, *Pltf's Aff. par. 1-21*. Admit that Paneccasio continued to be a 1991 Plan participant.

38.   Admit that Paneccasio received $75,419.22.   Deny the remaining allegations.

39.   Admit that on July 21, 2000 IKON's Board of Directors secretly took action to terminate the Plan effective December 31, 2000 *(Ex. 10-13)*.   Deny that their termination was permissible, because it was based on and resulted from IKON's own fraudulent and misleading conduct in violation of securities laws that caused IKON to pay $121 million dollars in settlement of a class action which is not an "event" that can permit or justify termination of the Plan with the resulting hardship to participants including the plaintiff. *(Ex. 14).*   The Plan was terminated because of IKON's own misconduct *(Ex. 14).*

40.   Denied.   While these were the justifications stated by Mr. Hope in explaining the rationale for termination of the Plan, we deny that Hope's explanation

was either the actual or justifiable "event" that could be used as the true basis for Plan termination. Rather, it was IKON's own misconduct which can never constitute a justifiable "event". *(Ex. 14 and Response to 39 above).* There were not even any tax changes that could justify the termination of the Plan.

41. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 39 and 40 above).*

42. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 39 and 40 above).*

43. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 39 and 40 above).*

44. Admit, but plaintiff further states that ALCO Standard Corporation was keenly aware when it spun off Unisource in January 1997 and then absorbed ALCO Office Products and changed its name to IKON later in January 1997 that the number of participants would be diminished and therefore ALCO-IKON caused the very

problem which it now seeks to use as justification for terminating the Plan. (*See also Ex. 14 and Responses to 39-43 above).*

45.  Denied.  See the response to 44 above.

46.  Admit that plaintiff was born on October 10, 1936 and therefore had not reached the age of 65 on December 31, 2000.  Admit that payment had not yet commenced. (*Pltf.'s Aff. par. 1-21).*  Deny remaining allegations.

47.  Admitted.  Letter was undated but apparently mailed on October 18, 2000 or after.

48.  Denied.  Paneccasio retired in 1994 in reliance upon the Early Retirement Package Exhibits 3,4 and 5 and the representations made to him at the time he accepted the Early Retirement Package offered by Unisource and ALCO Standard, IKON's predecessor. (*Pltf's Aff. par. 1-21, Ex. 1 and 2, dep. of Bauer and Hope, Pltf's memorandum in opposition, sections III - VI).*

49.  Admitted.

50.  Admitted.

51.   Admitted that the language is contained in that document, but deny as to the truth. (*See, Ex. 14).*

52.  Admitted.

53.   Admitted as to language but denied as to context, because Paneccasio would never have retired if he believed that the representations made to him at the time he accepted the Early Retirement Package in 1994 would be revoked and in his language "reneged on" by Unisource and ALCO Standard – later IKON.   (*Pltf's Aff. par. 1-21).*

54.   Admit as to language, deny as to representations made to Paneccasio. (*Pltf's Aff. par. 1-21).*

55.  Admitted.

56.  Admitted.

57.  Admitted.

58.  Admitted.

59.  Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Deny its validity (*Ex. 1-14, Pltf's Aff. par. 1-21, Pltf's memorandum in opposition, passim)*. Admit that Liu wrote this language to Paneccasio on behalf of the Retirement Plan Committee.

64. Admitted.

65. Admitted. (*Pltf's Aff. par. 1-21).*

66.  Admitted among other factors, see responses herein as well as those contained in plaintiff's Rule 56(a)2 Statement in response to the Unisource defendants.  (*Pltf's Aff. par. 1-21, Pltf's memorandum in opposition passim).*

67. Admitted (*Ex. 8).*

68. Admitted.

69. Denied.

70.   Denied.  See *Pltf.'s Aff. Passim*; responses 1-69 above; Pltf.'s Local Rule 56(a) 2 Statement in response to the Unisource defendants; *pltf's Memorandum in Opposition, passim*

## Disputed Issues of Material Fact

1.   Whether Unisource, ALCO Standard Corporation, IKON and Georgia Pacific were guilty of age discrimination against Eugene Panceccasio.

2.   Whether Unisource and ALCO Standard were employers.

3.   Whether IKON as successor to ALCO Standard is an employer.

4.   Whether Georgia Pacific as successor in interest to Unisource is an employer.

5.   Whether the 1994 Early Retirement Package contains an unconditional promise and representation to Paneccasio that when he turned age 65 he would receive a monthly benefit payment under the 1991 Alco Standard Corporation Deferred Compensation Plan of $812.50 for a period of 10 years and the benefits of a Split Dollar Life Insurance Policy including a cash value equal to 65% of $95,000; $61,750, and a paid up death benefit equal to 65% of $375,000 or $243,750 upon his death.

6.   Whether the promise of benefits to 1991 Plan participants in the 1994 Early Retirement Package was unconditional or a deception.

7. Whether Unisource and ALCO Standard Corporation deceived and misled Paneccasio when they induced him to accept their offer of the terms of the Early Retirement Package.

8. Whether Paneccasio reasonably believed that the 1994 Early Retirement Package contained an unconditional promise and guarantee that when he turned age 65 he would receive both his monthly benefit for 10 years and the cash value and paid up death benefit of the life insurance policy under the 1991 Plan.

9. Whether the complete absence of any reference in the 1994 Early Retirement Package accepted by plaintiff to the consequences of termination of the 1991 Plan contributed to the unconditional nature of the offer of benefits in the 1994 Early Retirement Package and to plaintiff's reasonable reliance and belief that the offer of benefits was not subject to revocation, rescission or loss under any circumstances including a subsequent termination decision by the Board of Directors of ALCO-IKON.

10. Whether Unisource and ALCO Standard Corporation made an unconditional representation or deceived plaintiff when it was represented at Ex. 3, pg. 4 that if Paneccasio accepted the "Early Retirement Window" he would "receive greater benefits than [he] would if [he] retire[d] later" and specifically that if he accepted the "Early Retirement Window" his "benefit" [under] the 1991 ALCO program would be

14

"payable at age 65" as distinguished from "Regular Early Retirement Benefits" which were dependent on "[P]lan participation at the time of retirement". (*Ex. 3, pg. 4*).

11.  Whether the Board of Directors of IKON, successors to the Board of Directors of ALCO Standard, who authorized the 1994 Early Retirement Package, could, in 2000, unilaterally revoke and rescind the 1994 unconditional contract containing the offer of benefits accepted by Paneccasio.

12.  Whether ALCO Standard, IKON, Unisource and Georgia Pacific acted jointly to conceal their intentions to terminate the 1991 Plan and to deprive plaintiff of his unconditional rights to benefits promised in the 1994 Early Retirement Package.

13.  Whether Unisource, ALCO, IKON and Georgia Pacific concealed from plaintiff their intention to terminate the 1991 Plan and to deny plaintiff the benefits of the 1994 Early Retirement Package and the 1991 Plan between March 1994 and sometime after October 18, 2000.

14.  Whether this concealment by the defendants deprived plaintiff of his ability to discover at any time prior to October 18, 2000 that Unisource and ALCO in 1994 had deceived him when they promised that his benefits under the 1991 Plan were unconditional.

15.  Whether the deception and concealment engaged in by Unisource, ALCO Standard, IKON and Georgia Pacific estop them from escaping liability for the deception perpetrated upon Eugene Paneccasio.

16  Whether IKON's explanation of decrease in interest rates was a pretext and concealment of the true and actual reason for Plan termination and whether the true reason or "event" motivating IKON was the consequence of its own deceptive and misleading practices in violation of securities law which resulted in IKON having to pay $121.1 million dollars in settlement of a shareholders class action as set forth in its 1999 Annual Report (*Ex. 14).*

THE PLAINTIFF,
EUGENE PANECCASIO


BY_____
  ANDREW B. BOWMAN
  Federal Bar No: ct00122
  1804 Post Road East
  Westport, CT 06880
  (203) 259-0599
  (203) 255-2570 (Fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this _____ day of December, 2004 to:

Felix J. Springer
Jennifer L. Sachs
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Kay Kyungsun Yu, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103


_____
ANDREW B. BOWMAN