UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE PANECCASIO, | : |
| Plaintiff, | : |
| VS. | : DOCKET NO: 3:01CV2065(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., ET AL | : : |
| Defendants | : DECEMBER 24, 2004 |

**PLAINTIFF PANECCASIO'S LOCAL RULE 56(a) 2
STATEMENT IN RESPONSE TO THE
UNISOURCE DEFENDANTS' RULE 56(a) 1
<u>STATEMENT</u>**

1. Admitted.

2. Admit that Unisource was a wholly-owned subsidiary of ALCO Standard Corporation in 1994. Admit that ALCO Standard Corporation was also the owner of a subsidiary known as ALCO Office Products (*Ex. 2, Hope dep. pg. 15-16*). Subsequently on January 27, 1997, nearly three years after Paneccasio's retirement, ALCO Standard Corporation which absorbed ALCO Office Products changed its name to IKON Office Solutions, Inc. (*Ex. 2. Hope dep. pg. 16*).

3. Admitted.

4. Admitted.

5.  The Prospectus entitled "YOUR PERSONAL EARLY RETIREMENT PACKAGE" (*Ex. 3*) which was offered by Raymond "Pike" Peterson, President of Unisource in February 1994 (*Ex. 3, Hope dep. pg. 1*) specifically offered the following benefits if Paneccasio retired as of April 1, 1994.

> **ALCO Standard Corporation Deferred Compensation Plans**
>
>> If you participate in the 1980 or 1985 ALCO Standard Corporation Deferred Compensation Plans [Paneccasio participated in the 1980 and 1991 plans] your benefit(s) will become fully vested. Benefits in the 1991 Plan will become 65% vested if you elected the five year option and 32.5% vested if you elected the ten year option. Under the 1991 Plan, you must continue to pay life insurance premiums to age 65.
>>
>> Your Benefit(s) under all of the Plans will be paid to you monthly at age 65. If you participate in any of these programs, see your personalized statement for the monthly benefit payable at age 65 under all of these programs. (*Ex. 3*).

Unisource also provided Paneccasio with a written representation of what he will receive if he elects to participate in the "Early Retirement Package". That Personal Statement (*Ex. 4*) states that he will receive the following in Deferred Compensation Plan Payments:

> **ALCO Standard Corporation Deferred Compensation Plan(s):**
>
> Your total vested monthly deferred compensation benefit under all Plans in which you have participated, payable at age 65 for a specific period, is: $3836.50.

On April 25, 1994 William M. Bauer, Director of Risk Management for ALCO Standard Corporation writes to Paneccasio (*Ex. 5*) with specific reference to the 1991 Deferred Compensation Plan.

> Dear Eugene,
>
> By accepting the Unisource Early Retirement Window, you have retained the pre-age 65 life insurance benefit under the ALCO Standard 1991 Deferred Compensation Plan.
>
> Alco will invoice you on a quarterly basis, commencing May 15, for the insurance premium applicable to this life insurance benefit. The amount of your coverage and the quarterly premium charge for the duration of the 1994 calendar years are as follows:
>
> Amount of Life Insurance Coverage:   $450,000
>
> Quarter Premium Charge:                  231.75
>
> Depending on your age, the insurance premium will increase by approximately 10% next year. (*Ex. 5*).

Exhibits 3, 4 and 5, the Early Retirement Package, the Personal Look and the Bauer letter clearly represent that Eugene Paneccasio would receive a deferred compensation benefit payable at age 65 and a life insurance policy a face value of $450,000. Plaintiff testified at his deposition that he was not at all sure that he received the prospectus before making his election to participate in the 1991 Plan. (*Ex. 6, Pltf's. dep, pg. 37-39*).

Admit that the Plan provides that employees who are terminated prior to "vesting" will be out of the Plan and would receive the amount of their deferrals without interest, but these participants would be denied return of all life insurance costs and payments made by them and would be denied further life insurance coverage and would lose all of the payments for life insurance made up to the date of termination (*Ex. 7, Plan par. 5*).

6. Admit that the Plan's termination provision is as set forth in defendant's Rule 56(a)1 Statement. However, plaintiff denies that there was a justifiable "event" justifying termination and denies that the Plan drafted in 1990 with an effective date of January 1, 1991 supersedes or takes a superior position to the subsequent 1994 Early Retirement Package (hereinafter ERP) accepted by plaintiff as the inducement to his retirement and critical decision to leave Unisource. (*Ex. 3, 4, 5*). The so-called "event"

upon which IKON relies in terminating the 1991 Plan was a false pretext. As set forth in *Ex. 14*, the 1999 Annual Report of Ikon Office Solutions states that on November 24, 1999 IKON reached a settlement in a series of class action complaints in the Eastern District of Pennsylvania brought on behalf of shareholders. The allegation was from January 24, 1996 to August 13, 1999 IKON and certain current and former principal officers and employee directors publicly disseminated false and misleading statements concerning IKON's revenue, profitability and financial condition in violation of federal securities laws. IKON was forced to pay $111 million dollars and $10.1 million dollars in legal fees for a total of $121.1 million dollars because of its own false, misleading and deceptive conduct (*Ex. 14, see also Section 7 of Pltf.'s Memorandum in Opposition).*

      7.    Admit that in 1994 ALCO Standard Corporation and its wholly owned subsidiary Unisource jointly prepared and drafted the Early Retirement Package (*Ex. 3, 4, 5*) that was offered to and accepted by plaintiff Paneccasio. William Bauer, then Director of Risk Management at ALCO Standard Corporation concedes in his deposition that there is no reference to any termination of the 1991 Plan either in the ERP (*Ex. 3)*, his April 25, 1994 letter (*Ex. 5)* or the "Personal Look" (*Ex. 4)*.

8.  Admitted to the extent set forth in defendant's Statement which is a partial recitation of the provisions of the Early Retirement Package (*Ex. 3).*

9.  Admitted.

10.  Admitted that this is an accurate quotation of a portion of Hope's testimony.

11.  Denied. A reading of plaintiff's deposition at pg. 86-87 (*Ex. 6*) does not show that Paneccasio understood that "absent vesting" he would have received his contributions without interest when he took early retirement.

12.  Denied that the Early Retirement Package "clearly specified" that the 1991 Plan documents took precedent. Plaintiff testified at deposition that he did not consult the 1991 Plan document before accepting the Early Retirement Program (*Ex. 6, Pltf's dep. pg. 61*). He accepted the Early Retirement Program based on the language of the offering itself (*Ex. 3, Pltf's dep. pg.61, Ex. 6).* Plaintiff did not recall reviewing the 1991 Plan before accepting the Early Retirement Program (*Ex. 6, Pltf's dep. pg. 62).* When plaintiff accepted the offer by Unisource and ALCO Standard Corporation (*Ex. 3, 4),* he rightly and reasonably believed that the Board of Directors approved the Early Retirement Package and regarded this as an employment entitlement, since it was national throughout ALCO (*Ex. 6, Pltf's dep. pg. 66-67).*

13. Admitted that Panceccasio accepted Unisource's and ALCO Standard Corporation's offer of the Early Retirement Option and retired in April 1994 in full reliance on the representations made by ALCO Standard and Unisource in *Ex. 3, 4 and 5*. (*Pltf's Aff. par. 1-21*).

14. Admitted that on January 1, 1997 ALCO Standard Corporation, spun off Unisource.

15. Admitted that Georgia-Pacific acquired Unisource in July 1999, and sometime after March 13, 2000 Georgia-Pacific expressed its consent to provisions related to the 1991 Plan termination and declared Georgia-Pacific to be successor in interest to Unisource Worldwide, Inc. (*Ex. 2, Hope. dep. pg. 103*).

16. Admit that IKON retained control over the administration of the 1991 Plan but deny that it was exclusive (*Ex. 2, Hope dep. pg. 103*).

17. Deny that the Plan was terminated because of tax law changes or other events as set forth in the Plan. There was no evidence that the Plan was terminated because of any tax law changes. In fact, the 1991 Plan was terminated, because of IKON's fraudulent and deceptive conduct causing it to be required to pay $121 million dollars in settlement of a class action suit (*Ex. 14*), see also, <u>plaintiff's memorandum in opposition</u> (Section VII), an "event", totally unjustifiable to warrant termination of the

Plan (*Ex. 2, Hope dep. pg. 68)*. In fact, there was never any communication to Plan participants explaining the reasons why the Board of Directors terminated the 1991 Plan (*Ex. 2, Hope. dep. pg. 69)*.

18. Admit paragraph 18 with the exception of "exclusively", since IKON was clearly seeking Georgia-Pacific's consent to the provisions related to Plan termination as early as March 2000 (*Hope dep. pg. 103-104, Ex. 2, see also Ex. 10-13*).

19. Admit that Paneccasio received a lump sum distribution comprising his deferrals plus 6% interest. The tax in fact was devastating and completely contrary to the rationale for a Deferred Compensation Plan. (*Ex. 1, Bauer dep. pg. 34*).

20. Admitted.

21. Denied. On March 13, 2000 Georgia-Pacific, through Mary Hodgins, an attorney for Georgia-Pacific expressed Georgia-Pacific's consent to the provisions related to plan termination with respect to the 1991 Deferred Compensation Plan and declared Georgia-Pacific to be successor in interest to Unisource Worldwide (*Ex. 2, Hope. dep. pg. 103-104; Ex. 10-13*). Georgia Pacific then agreed with IKON to conceal the proposed termination from Plan participants (*Ex. 10-13*).

22. Denied. Had Georgia-Pacific in March 2000 withheld consent to the 1991 Plan termination, there is every reason to believe that the Board of Directors at IKON would have changed their mind about Plan termination. The notion that neither Unisource nor Georgia-Pacific played any role is belied by the giving of consent by Georgia-Pacific to IKON for the proposed Plan termination which took place ultimately in December of 2000 and Georgia Pacific's promise to conceal the proposed Plan termination by IKON (*Ex. 10-13*).

## Disputed Issues of Material Fact

1. Whether Unisource, ALCO Standard Corporation, IKON and Georgia Pacific were guilty of age discrimination against Eugene Paneccasio.

2. Whether Unisource and ALCO Standard were employers.

3. Whether IKON as successor to ALCO Standard is an employer.

4. Whether Georgia Pacific as successor in interest to Unisource is an employer.

5. Whether the 1994 Early Retirement Package contains an unconditional promise and representation to Paneccasio that when he turned age 65 he would receive a monthly benefit payment under the 1991 Alco Standard Corporation Deferred Compensation Plan of $812.50 for a period of 10 years and the benefits of a Split Dollar Life Insurance Policy including a cash value equal to 65% of $95,000;

$61,750, and a paid up death benefit equal to 65% of $375,000 or $243,750 upon his death.

6. Whether the promise of benefits to 1991 Plan participants in the 1994 Early Retirement Package was unconditional or a deception.

7. Whether Unisource and ALCO Standard Corporation deceived and misled Paneccasio when they induced him to accept their offer of the terms of the Early Retirement Package.

8. Whether Paneccasio reasonably believed that the 1994 Early Retirement Package contained an unconditional promise and guarantee that when he turned age 65 he would receive both his monthly benefit for 10 years and the cash value and paid up death benefit of the life insurance policy under the 1991 Plan.

9. Whether the complete absence of any reference in the 1994 Early Retirement Package accepted by plaintiff to the consequences of termination of the 1991 Plan contributed to the unconditional nature of the offer of benefits in the 1994 Early Retirement Package and to plaintiff's reasonable reliance and belief that the offer of benefits was not subject to revocation, rescission or loss under any circumstances including a subsequent termination decision by the Board of Directors of ALCO-IKON.

10. Whether Unisource and ALCO Standard Corporation made an unconditional representation or deceived plaintiff when it was represented at Ex. 3, pg. 4 that if

Paneccasio accepted the "Early Retirement Window" he would "receive greater benefits than [he] would if [he] retire[d] later" and specifically that if he accepted the "Early Retirement Window" his "benefit" [under] the 1991 ALCO program would be "payable at age 65" as distinguished from "Regular Early Retirement Benefits" which were dependent on "[P]lan participation at the time of retirement". (*Ex. 3, pg. 4)*.

      11. Whether the Board of Directors of IKON, successors to the Board of Directors of ALCO Standard, who authorized the 1994 Early Retirement Package, could, in 2000, unilaterally revoke and rescind the 1994 unconditional contract containing the offer of benefits accepted by Paneccasio.

      12. Whether ALCO Standard, IKON, Unisource and Georgia Pacific acted jointly to conceal their intentions to terminate the 1991 Plan and to deprive plaintiff of his unconditional rights to benefits promised in the 1994 Early Retirement Package.

      13. Whether Unisource, ALCO, IKON and Georgia Pacific concealed from plaintiff their intention to terminate the 1991 Plan and to deny plaintiff the benefits of the 1994 Early Retirement Package and the 1991 Plan between March 1994 and sometime after October 18, 2000.

      14.  Whether this concealment by the defendants deprived plaintiff of his ability to discover at any time prior to October 18, 2000 that Unisource and ALCO in 1994

had deceived him when they promised that his benefits under the 1991 Plan were unconditional.

15. Whether the deception and concealment engaged in by Unisource, ALCO Standard, IKON and Georgia Pacific estop them from escaping liability for the deception perpetrated upon Eugene Paneccasio.

16  Whether IKON's explanation of decrease in interest rates was a pretext and concealment of the true and actual reason for Plan termination and whether the true reason or "event" motivating IKON was the consequence of its own deceptive and misleading practices in violation of securities law which resulted in IKON having to pay $121.1 million dollars in settlement of a shareholders class action as set forth in its 1999 Annual Report (*Ex. 14)*.

                                THE PLAINTIFF,
                                EUGENE PANECCASIO


                                BY_____
                                   ANDREW B. BOWMAN
                                   Federal Bar No: ct00122
                                   1804 Post Road East
                                   Westport, CT 06880
                                   (203) 259-0599
                                   (203) 255-2570 (Fax)

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was mailed, postage prepaid, on this ____ day of December, 2004 to:

Felix J. Springer
Jennifer L. Sachs
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Kay Kyungsun Yu, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

_____
ANDREW B. BOWMAN