UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE PANECCASIO, | : |
| Plaintiff, | : |
| VS. | : DOCKET NO: 3:01CV2065(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., ET AL | : : |
| Defendants | : DECEMBER 23, 2004 |

**COUNTER AFFIDAVIT OF PLAINTIFF EUGENE
PANECCASIO IN OPPOSITION TO MOTIONS
<u>FOR SUMMARY JUDGMENT BY ALL DEFENDANTS</u>**

Eugene Paneccasio, having been sworn, deposes and says:

1. I am the plaintiff in this action. I was born on October 10, 1936 and was employed by Unisource Worldwide, Inc. and Rourke-Eno a division of Unisource from December 1971 through March 31, 1994. At all times during my employment, Unisource was a wholly owned subsidiary of ALCO Standard Corporation.

2. On March 31, 1994 I was induced to leave my employment with Unisource by representations made by Unisource and ALCO Standard Corporation as part of

what was described as an Early Retirement Package (*Ex. 3*). I was 57 years of age at the time.

3. I was induced to take early retirement at age 57 when Unisource and ALCO Standard Corporation represented to me that if I retired not later than March 31, 1994, among other things, but as a critical inducement to me, Unisource and ALCO guaranteed and represented to me that the benefits under the 1991 ALCO Standard Corporation Deferred Compensation Plan, later known as the 1991 IKON Office Solutions Deferred Compensation Plan would be 65% vested if I retired and that at age 65 I would be paid deferred compensation in the following respects: a monthly benefit payment of $812.50 when I turned 65 years of age for a period of 10 years and that I would receive the benefits of a certain life insurance policy which benefits included a cash value equal to $95,000 at age 65 of which I would be entitled to 65% or $61,750, a paid up death benefit equal to $375,000 of which I would be entitled to 65% or $243,750 upon my death.

4. I was 57 years of age and Vice President of Sales and National Accounts at Unisource. I had another life insurance policy at the time with Liberty Mutual which I permitted to lapse in reliance upon the promises and representations made to me by Unisource and ALCO Standard in March 1994 upon which I relied.

5.  I believed that it was reasonable to rely upon the promises which were unconditional under the terms of the Early Retirement Plan (*Ex. 3)* and specific as set forth in "A Personal Look…At Your Retirement" (*Ex. 4)*.  In "The Personal Look" I was promised a monthly deferred compensation benefit under all plans in which I participated payable at age 65 for a specific period of $3,836.50 (*Ex. 4)*.  The 1991 Plan deferred compensation payment was $812.50 of that figure.  The remaining portion of the figure dealt with the 1980 ALCO Standard Deferred Compensation Plan of which I was a participant.

6. On April 25, 1994 William Bauer, then Director of Risk Management at ALCO Standard Corporation wrote to me (*Ex. 5)* and advised that "By accepting the Unisource Early Retirement Window, [I] have retained the pre-age 65 life insurance benefit under the ALCO Standard 1991 Deferred Compensation Plan." (*Ex. 5)*. Bauer advised that the amount of life insurance coverage was $450,000 and the quarterly premium charge was $231.75.  He also advised that depending on my age, the insurance premium would increase in the future and specifically he told me by approximately 10% next year (*Ex. 5)*.

7. The benefits under the 1991 ALCO Standard, later IKON, Plan was a critical element in my decision to leave my 22½ years of employment and my position as Vice President of Sales and National Accounts.

8. If I had known that the benefits promised to me in the ERP in 1994 could be taken away in the future by the unilateral action of ALCO Standard or its successor, IKON, I never would have retired. I would have continued my employment at Unisource in my capacity as Vice President of Sales and National Accounts; I never would have permitted my other life insurance policy with Liberty Mutual to lapse in reliance upon the Split Dollar Life Insurance Policy promised to me in the 1994 ERP, and I would have earned far more money by staying employed. Further, my ability to gain alternative employment would be enhanced if I continued to work at Unisource rather than deciding to seek other employment after I retired.

9. The guarantee of benefits to me under the ERP was a clear inducement to my retirement. I believed that it was a separate employment entitlement that was written and encompassed the 1991 Plan. I felt that when I looked at it, it was okay for me to do. If I had known or been aware of the possibility that my benefits under the 1991 ALCO Plan could be taken away from me by ALCO or its successor, IKON, I would never have been a part of the Early Retirement Package, I would not have

retired, and I would have continued to work to age 65, at which time I would have had a larger pension benefit, as well as an insurance policy that carried a death benefit and a cash value which I felt I would need at age 65 to protect myself, my family and my wife (*Ex. 6, Pltf's dep. pg. 34*).

      10. As part of the Early Retirement Package, Unisource provided me with another document that was part of the "Personal Look" relating to optional forms of pension payments available if I took early retirement (*Ex. 4a*). I elected a "Single Life Annuity" in the monthly amount of $2,016.62 as my monthly benefit under my Pension Plan. That provided no payment for my spouse. Therefore, if my spouse survived me, she would not receive any pension payments if I took early retirement. I chose the Single Life Annuity option for payment of my pension, because of the representations made to me by Unisource and ALCO that under my election of Option II, I would receive the benefits of the Split Dollar Life Insurance Policy with a cash value of $95,000 and a paid up death benefit of $375,000 at age 65. I continued to pay the premiums on that Split Dollar Life Insurance Policy with complete faith that by doing so I would receive the cash value and death benefit promised to me. Because my wife was a beneficiary under that Split Dollar Life Insurance Policy, I chose the Single Life

Annuity with no survivor annuity, because my wife would receive the death benefit of that life insurance policy which equaled 65% of $375,000 upon my death.

11.  When I received Bill Bauer's letter of April 25, 1994 (*Ex. 5)*, ALCO Standard was telling me that the amount of pre-age 65 life insurance coverage was $450,000 (*Ex. 5)*.

12.  The Early Retirement Package contained an unconditional promise to me that when I reached the age of 65, provided I continued to pay insurance premiums, which I did, I would receive the benefits which included the sum of $97,500 in deferred compensation over 10 years at the rate of $812.50, the cash value of the Split Dollar Life Insurance Policy which at 65% would equal $61,750 a age 65 and a death benefit at 65% equal to $243,750 upon my death.

13.  When I received the letter from IKON sometime after October 18, 2000 advising me that IKON was terminating the 1991 Plan, this was the first moment that I had any knowledge or inkling that Unisource and ALCO-IKON were reneging on the promises made to me in 1994 in the ERP (*Ex. 3*) upon which I relied specifically in making my decision to take early retirement at age 57.

14.  It was clear that Unisource and ALCO-IKON deceived me in 1994 and induced me (a) to give up my employment of 22½ years, (b) to give up my position as

Vice President of Sales and National Accounts, (c) to freeze my pension rights as of March 31, 1994 and to choose the Single Life Annuity rather than a Joint Survivor Annuity and (d) to permit what clearly appeared to me to be duplicative insurance coverage on my life to lapse since I was receiving the benefit of the Split Dollar Life Insurance Policy under the Plan. I therefore did not purchase additional life insurance to protect my wife in the event of my death.

15. I had no knowledge, nor did I have any way to gain knowledge, that IKON was planning to terminate the 1991 Plan as early as 1999, as I later came to learn during discovery in this case; nor did anyone from Unisource, Georgia Pacific, ALCO or IKON provide me with any information regarding IKON's proposed Plan termination.

16. I was shocked to learn from reading the Hope and Bauer depositions in this case that the MetLife Insurance Policy on my life has been kept in force by IKON apparently pending the outcome of this litigation.

17. There was nothing in the ERP, Personal Look or Bauer letter (*Ex. 3,4, 5)* that explained in any way whether there would or could be any kind of consequence or impediment to my receipt of deferred compensation payments of $812.50 per month when I reached age 65 and my right to the cash value and death benefit of the Split Dollar Life Insurance Policy on which I paid premiums continuously.

18. Unisource, IKON, ALCO Standard and Georgia Pacific concealed from me any likelihood or even possibility that the 1991 Plan's termination could or would result in the loss of my benefits under the 1991 Plan as promised to me in the ERP and "Personal Look" *(Ex. 3, 4, 5)*. There is absolutely no language contained in the ERP or "Personal Look" that states that I would not receive these benefits if the 1991 Plan was terminated.

19. Since it appeared to me that both Unisource and ALCO Standard Corporation were involved in the presentation of the ERP, the "Personal Look" and Bauer's letter (*Ex. 3, 4, 5)*, I had no reason to believe that the benefits promised in the ERP relating to deferred compensation and Split Dollar Insurance were not approved by the very same Board of Directors that were in control of the 1991 ALCO Plan.

20. I relied upon the representations made by Unisource and ALCO in making my decision to retire from Unisource; I planned the financial security for myself and my family based upon those representations including the form of my pension payment (*Ex. 4a)*; I had no reason to doubt the truth of the representations or the unconditional character of those representations as they related to the benefits that were promised to be paid to me at age 65 including the deferred compensation and insurance policy benefits.

21. Neither Unisource nor ALCO Standard provided or made available either William Bauer or any other individual with whom I could consult about the meaning of the ERP provisions. I took Unisource and ALCO at their word, and in reliance on their word, I changed my life dramatically. I and my wife are now suffering and will continue to suffer the financial consequences of the deception by Unisource, ALCO, IKON and Georgia Pacific, since I would have turned 65 on October 10, 2001.

                                                            _____
                                                            EUGENE PANECCASIO

Subscribed and sworn to before me this \_\_\_\_\_ day of December, 2004

                                                            _____
                                                            NOTARY PUBLIC

**CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was mailed, postage prepaid, on this ____ day of December, 2004 to:

Felix J. Springer
Jennifer L. Sachs
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Kay Kyungsun Yu, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

_____
ANDREW B. BOWMAN