## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE PANECCASIO, | ) |
| | ) Civil Action No. 3:01 CV 2065 (CFD) |
|   Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNISOURCE WORLDWIDE, INC., | ) |
| GEORGIA-PACIFIC CORPORATION, | ) |
| ALCO STANDARD CORPORATION, and | ) |
| IKON OFFICE SOLUTIONS, INC., | ) |
| | ) |
|   Defendants. | ) January 26, 2005 |

### UNISOURCE DEFENDANTS' REPLY
### IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

In his omnibus opposition to the defendants' motions for summary judgment, plaintiff

Eugene Paneccasio ("Paneccasio") is unable to contest the central, controlling fact in this

litigation: that when he accepted an early retirement package from defendant Unisource

Worldwide, Inc. ("Unisource") in February 1994, he was accurately informed as to the benefits

that would accrue to him, including benefits payable according to the terms of a deferred

compensation plan (the "1991 Plan" or the "Plan") created by Alco Standard Corporation ("Alco

Standard") and subsequently controlled by IKON Office Solutions, Inc. ("IKON").   Paneccasio

also cannot contest – indeed, he concedes – that the 1991 Plan specifically allowed for termination

at the sole discretion of the IKON Board of Directors; that upon such termination, it provided for a

termination benefit to be paid to each participant; and that he in fact received the termination

benefit as provided for under the Plan.  (See Local Rule 56(a)(2) Statement at ¶¶ 6, 19.)

Because he cannot challenge these facts, Paneccasio has no viable claim, either for age

discrimination or for any purported violation of ERISA.  And while he attempts to portray the

defendants as conspirators and their communications to him as false and fraudulent, the evidence of record fatally undermines any such contentions. As such, the Unisource Defendants are entitled to summary judgment in this case.

## I.     Paneccasio Has No Claim Under ERISA.

Paneccasio has conceded that he has no valid claim under any statutory provision of ERISA, but only a purported claim for equitable estoppel.[1]  (See Pl.'s Opp'n at 22-23.)  As he correctly notes, however, equitable estoppel requires the satisfaction of four elements: (1) a promise; (2) reliance on the promise; (3) injury caused by the reliance; and (4) an injustice if the promise is not enforced." Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999).  Equitable estoppel under ERISA additionally requires the presence of "extraordinary circumstances." See id. (citing cases).

In this case, Paneccasio cannot establish that he reasonably relied on any false promise by the Unisource Defendants, and there would accordingly be no injustice in denying his purported claim for equitable estoppel.  Indeed, the only injustice here would lie in holding the Unisource Defendants to a "promise" that they never made, and that was directly contradicted by the terms of the agreement Paneccasio entered into upon his early retirement.

### A.     There Was No False Promise Upon Which Paneccasio Reasonably Could Rely.

Paneccasio repeatedly has urged the Court to view the documents he received in connection with his early retirement as containing affirmative misrepresentations about his potential benefits under the Plan.  (See, e.g., Pl.'s Opp'n at 5-11.)  He ignores the fact that those documents, which accurately set out the benefits that Paneccasio would have received under the

---

[1] Paneccasio also notes the existence of a federal common law cause of action for breach of fiduciary duty.  (See Pl.'s Opp'n at 23.)  In light of the fact, uncontroverted by Paneccasio, that no

1991 Plan were it operative when Paneccasio turned 65, also specifically stated that the Plan's terms – including its termination provision – governed in the case of any dispute.  As such, although Paneccasio may not have read the early retirement documents as carefully as he should, there is no dispute that the documents alerted him to the possibility of termination and made clear that his benefits under the 1991 Plan would vary according to whether or not the Plan was still in place when he turned 65.  (See Exhs. C, D to Defs. Rule 56(a)(1) Statement.)

Paneccasio relies heavily on what he contends is a significant discrepancy between the description provided in the early retirement documents of "regular" early retirement benefits and those available to him under the "special" early retirement window.  (See Pl.'s Opp'n at 8-9.)  As Paneccasio correctly notes, the document titled "Your Personal Early Retirement Package" contains a side-by-side comparison of all the benefits available to individuals who elected special early retirement, regular early retirement, or regular retirement, including the following comparison of deferred compensation benefits.  He is wrong, however, in suggesting that this comparison in any way misrepresented the benefits available to him:

> **Special Early Retirement Window Benefits:**
> Deferred Compensation:  Full vesting in your benefits, if any, under the 1980 and 1985 Alco programs; partial vesting in the 1991 Alco program; benefit payable at age 65
> **Regular Early Retirement Benefits:**
> Deferred Compensation:  Vesting in your benefits, if any, under the 1980, 1985 or 1991 Alco programs based on plan participation at retirement; benefit payable at age 65
> **Regular Retirement Benefits at Age 65 (or Older):**
> Deferred Compensation:  Full vesting in your benefits, if any, payable immediately under the 1980, 1985, or 1991 Alco programs

(See Ex. D to Defs. Rule 56(a)(1) Statement, at 4.)

---

fiduciary duties were implicated by the termination of the Plan because such termination is a settlor function, this common law cause of action is irrelevant.

Despite Paneccasio's best effort to paint this comparison as a fraudulent inducement, there is nothing false or inaccurate about it, nor does it suggest that individuals who took "special" early retirement, unlike those who elected "normal" early retirement or regular retirement, had some unique protection against termination of the 1991 Plan pursuant to its terms. In fact, the comparison makes clear that those who elected "special" early retirement would only be eligible for a portion of their benefits under the 1991 Plan, as compared with those who elected later retirement and could receive all of their benefits – hardly an indication, as Paneccasio has claimed, that the "special" early retirement window induced participants with a promise of "greater benefits" under the 1991 Plan.[2]  (See id.)

Paneccasio's misguided claim, that the benefits comparison set forth above evidences fraud, stems from his continued failure to acknowledge all of the relevant terms of the 1991 Plan. As set forth in the Unisource Defendants' opening memorandum and as acknowledged by Paneccasio (see Rule 56(a)(2) Statement at ¶ 5), the Plan provided that employees whose employment terminated prior to "vesting," which ordinarily occurred after ten calendar years of service beginning with the effective date of the Plan on January 1, 1991, would not be entitled to remain in the Plan but would instead receive their deferrals without interest. (See Ex. C to Defs. Rule 56(a)(1) Statement, at 11.)  Therefore, Paneccasio's ability to remain in the Plan beyond the termination of his employment was contingent on the "vesting" which he was granted when he elected special early retirement. Had Paneccasio retired later, his entitlement to benefits under the 1991 Plan would have depended entirely on whether he was a "vested" participant at the time of his retirement. That is the difference between the "special early retirement window benefits" and

---

[2] The "special" early retirement window did offer additional benefits, such as a special cash bonus and guaranteed medical coverage.  (See Ex. D to Defs. Mem. at 4.)

-4-

the "regular early retirement benefits," as set forth in the comparison – the former, unlike the latter, conferred ongoing participant status.

The only relevant promise contained in the early retirement documents offered to Paneccasio is that, despite his departure from employment, he would continue to be a participant in the 1991 Plan and would receive benefits under the terms of the Plan. It is uncontroverted that this promise was kept. As such, Paneccasio cannot establish any false promise on which he reasonably relied, and no claim for equitable estoppel against the Unisource Defendants.

**B.**    **Paneccasio's Treatment By The Defendants Involves Neither A Threat Of Injustice Nor Extraordinary Circumstances.**

Paneccasio's verbiage notwithstanding, the equitable principles in this case do not militate in his favor. Given that he incontrovertibly received every benefit that he was promised under his election of "special" early retirement, the only injustice would lie in conferring additional benefits on him, without any justification, based at most on his misapprehension about how the 1991 Plan worked. The Unisource Defendants have committed no wrong in this case, and no extraordinary circumstances exist to support the invocation of estoppel against them. They are entitled to summary judgment on this claim.

**II.**    **Paneccasio Has No Claim For Age Discrimination.**

As set forth in the Unisource Defendants' opening memorandum, Paneccasio's purported claim for age discrimination is identical to his purported claim under ERISA, except that he adds the conclusion that the allegedly fraudulent inducement was made on account of his age. For the reasons set forth above, there was no fraudulent inducement, and therefore Paneccasio's age discrimination claim fails as a matter of law. Moreover, given that he failed to bring the claim until seven years after his early retirement, it is clearly time-barred.

Paneccasio relies on the doctrine of equitable tolling to salvage his claim.  His attempt is unavailing.  As this Court stated in its ruling on the motion to dismiss in this case, the doctrine of equitable tolling would be applicable as to the Unisource Defendants only if there were some evidence that the Unisource Defendants "fraudulently concealed the facts that formed the basis of" his claim.  Paneccasio v. Unisource Worldwide, Inc. et. al., No. 3:01 CV 2065, 2003 U.S. Dist. LEXIS 4757, at *10 (D. Conn. Mar. 28, 2003).   According to Paneccasio, those "facts" would be (1) that the termination provision in the 1991 Plan remained in full force regardless of his partial "vesting" pursuant to the early retirement plan; and (2) that the IKON Board of Directors intended to terminate the Plan in 2000.

Paneccasio has pointed to no evidence tending to show that the Unisource Defendants concealed the continuing validity of the 1991 Plan provisions; indeed, the record is clear that Paneccasio was expressly advised of this fact.  Paneccasio also has pointed to no evidence that the Unisource Defendants somehow were aware in 1994 that the IKON Board of Directors would ultimately terminate the Plan, and his recitation of facts purportedly evidencing "joint action" among the various defendants only makes clear that his wild conspiracy theories are completely devoid of merit.[3]  Because there was no fraudulent concealment, Paneccasio's purported claim for age discrimination is time-barred and the Unisource Defendants are entitled to summary judgment.

_____

[3] Paneccasio devotes several pages of his opposition brief to detailing what he claims is evidence of "joint action" among the various defendants, and in particular between the Unisource Defendants and the IKON Defendants.  (See Pl.'s Opp'n at 14-19.)  Upon examination, however, not a single one of Paneccasio's factual allegations purports to contradict the basic fact that IKON decided to terminate the Plan with no involvement from the Unisource Defendants.  (See Defs. Mem. at 11-12.)  The fact that the Unisource Defendants may have been informed of this decision is irrelevant to the question whether they had substantive control over it, and the answer to that question is incontrovertibly that they did not.

Indeed, Paneccasio's allegations do not even purport to evidence "joint action."  For the most part, they simply repeat the corporate chronology set forth in the Unisource Defendants'

### III.     Paneccasio's Own Opposition Demonstrates That The Unisource Defendants Did Not Engage In Any Improper Behavior Toward Him.

Although Paneccasio studiously avoided making this claim until now, with the filing of his opposition, it is apparent that he is really challenging not the early retirement program or promises purportedly made to him therein, but the ability of the IKON Board of Directors to terminate the Plan in 2000.  Paneccasio argues that IKON terminated the Plan because it needed revenues to pay for legal and settlement costs it incurred in connection with an unrelated class action lawsuit.  (See Pl.'s Opp'n at 25-28.)  Paneccasio further contends that, assuming these allegations to be true, IKON could not legally terminate the Plan.[4]  (Id.)

As set forth in the reply brief of the IKON Defendants, at whom this argument principally is directed, Paneccasio's contentions are without merit.  They are nonetheless relevant, because they underscore that Paneccasio's true grievance is not some allegedly false promise of the Unisource Defendants, but the subsequent, unrelated decision of the IKON Board of Directors to terminate the Plan.  His true reliance was not on an alleged misrepresentation by Unisource, but on the belief – erroneous, as it turned out – that the Plan would continue in existence.

---

opening brief.  Paneccasio's ultimate conclusion, that there was a "cooperative effort between IKON and Georgia-Pacific/Unisource" (see Pl.'s Opp'n at 19), is without factual foundation.

[4] Paneccasio further requests the reinstatement of state law claims that were dismissed by this Court almost two years ago, on March 27, 2003.  At this point, of course, such a request is untimely.  See D. Conn. L. Civ. R. 7(c)1 ("Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought . . . .").  Even if the request were timely, reconsideration still would not be warranted, as Paneccasio has cited no controlling decisions that the Court overlooked in its original ruling.  See, e.g., Chambers v. Principi, No. 3:00CV656, 2004 WL 722249, at *1 (D. Conn. Mar. 24, 2004).  Finally, at this point, following the close of discovery and the completion of dispositive motion pleadings, reinstating the state law claims would be grossly prejudicial to all of the defendants.

These circumstances do not indicate wrongdoing.  They are not actionable.  Under the undisputed facts, there is no basis for Paneccasio to maintain any claim against the Unisource Defendants, and this Court should enter summary judgment for the Unisource Defendants on all counts of Paneccasio's Amended Complaint.

## **CONCLUSION**

For the reasons set forth above, the Unisource Defendants respectfully request that this Court enter an Order (1) granting summary judgment to the Unisource Defendants on Paneccasio's Amended Complaint and (2) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,


THE DEFENDANTS
UNISOURCE WORLDWIDE, INC.
GEORGIA-PACIFIC CORPORATION


_____
Felix J. Springer (ct 05700)
Jennifer L. Sachs (ct 20684)
Day, Berry & Howard, LLP
CityPlace I
Hartford, CT  06103-3499
Tel:  860/275-0100
Fax: 860/275-0343
E-mail: fjspringer@dbh.com
         jlsachs@dbh.com

Rayne Rasty (ct 24918)
Georgia-Pacific Corporation
133 Peachtree St. NE
Atlanta, GA  30303
Tel:  404/652-4972
Fax:  404/584-1461
E-mail:  rmrasty@gapac.com

## **CERTIFICATE OF SERVICE**

This is to certify that on this date, I served a copy of the foregoing via first-class mail, postage prepaid to:

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT 06880

Joseph J. Costello, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Kay Kyungsun Yu, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

Robert L. Wyld, Esq.
Patrick Fahey, Esq.
Shipman & Goodwin
1 American Row
Hartford, CT 06103

_____
Felix J. Springer