UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE PANECCASIO, : | |
| : | |
| Plaintiff, : | |
| : | DOCKET NO. 3:01cv2065 (CFD) |
| v. : | |
| : | |
| UNISOURCE WORLDWIDE, INC., et al., : | |
| : | |
| Defendants. : | FEBRUARY 18, 2005 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE IKON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

There are two questions for this Court to decide with respect to Plaintiff Eugene Paneccasio's claims against Alco Standard Corporation, IKON Office Solutions, Inc. ("IKON"), the Board of Directors of IKON, and Walter J. Hope (collectively, the "IKON Defendants"). First is whether Paneccasio was paid all of the benefits to which he was entitled under the IKON Office Solutions, Inc. 1991 Deferred Compensation Plan (the "Plan"), taking into consideration Paneccasio's Early Retirement Package. Second is whether the termination of the Plan, which affected all similarly-situated participants in the same manner regardless of age, can constitute a violation of the Age Discrimination in Employment Act ("ADEA").

As discussed in detail in the IKON Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (the "Memorandum"), IKON's Board of Directors acted in accordance with the terms of the Plan to terminate it when it determined that continuing the Plan would cause an adverse financial impact on IKON. In his Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment (the "Opposition"), Paneccasio

presents a lengthy and self-serving recitation of facts that are wholly irrelevant to the dispositive questions in regard to the IKON Defendants.

First, Paneccasio has failed to put forward evidence that is admissible or relevant to dispute the fact that the Board of Directors of IKON properly exercised its discretion to terminate the Plan and pay Paneccasio and all other participants the Termination Benefits as set forth under the Plan's terms. Therefore, any and all claims asserted by Paneccasio under ERISA fail as a matter of law.

Second, the Early Retirement Package, the Plan termination, and the payment of the Termination Benefit pursuant to the terms of the Plan, were lawful under the ADEA. Accordingly, this Court should grant the IKON Defendants' motion for summary judgment.

## II.  ARGUMENT

### A.  Paneccasio's ERISA Claims[1]

#### 1.  Paneccasio Has Failed To State An Estoppel Claim Against The IKON Defendants.

Paneccasio's argument that he has stated a viable claim for estoppel under ERISA is premised entirely upon a selective reading of his Early Retirement Package, taken out of context from the terms of the Plan, which results in a mischaracterization of the intended effect of both documents. The operative language in the Early Retirement Package states that: "Benefits in the 1991 Plan will become 65% vested if you elected the five year option and 32.5% vested if you elected the ten year option. Under the 1991 Plan, you must continue to pay life insurance premiums to age 65." (IKCP 168.) Paneccasio also refers to the estimate of

---

[1]  Paneccasio did not respond to the IKON Defendants' arguments regarding his breach of fiduciary duty claims in his Opposition, thereby, conceding that judgment should enter in favor of the IKON Defendants on such claims.

benefits entitled "A Personalized Look," which he received as part of the brochure describing the Early Retirement Package, to claim that he had no reason to believe that the Plan could be terminated in 2000. (Opposition at 9-11.) This is simply not the case.

The Plan, since before its inception, contained a provision permitting the IKON Board of Directors to terminate the Plan under certain circumstances. Paneccasio has admitted that he received a copy of the Plan when he was initially offered the opportunity to participate and that he carefully read and understood the terms of the Plan before electing to participate. (Paneccasio Dep. 32:16-25; 33:10-12; 34:8-14; 35:13-23.) Nothing in the Early Retirement Package abrogated the right of IKON's Board of Directors to invoke the Termination Provision. To the contrary, the Early Retirement Package expressly that the terms of the Plan would govern by stating the following:

> In an effort to keep the language as clear and non-technical, yet correct, as possible, the benefits described in this brochure are only summaries of the Early Retirement window's major provisions. More detailed information is available from the plan documents and insurance contracts. In case of any dispute, the official legal documents or contracts will govern over this brochure.

(IKCP 172.)

The Early Retirement Package, read in conjunction with the Plan, does not contain an unconditional promise to pay the benefits Paneccasio now seeks. Rather, Paneccasio was paid the proper benefits in accordance with the Plan's provisions as mandated by the Early Retirement Package. Exercising its discretion in accordance with the terms of the Plan, IKON's Board of Directors determined that, as a result of the decline in interest rates and the decrease in the number of participant making deferrals, the Plan would create an adverse financial impact on IKON. (Memorandum at 6.) After the Plan was properly terminated, Paneccasio was appropriately paid the Termination Benefit in accordance with Section 19 of

the Plan and consistent with the terms of the Early Retirement Package. Because Paneccasio was paid all of the benefits to which he was entitled under the Plan, he cannot establish the second or third essential elements of estoppel; he could not have reasonably relied, to his detriment, on a representation that was never made to him.

Finally, Paneccasio's inflammatory rhetoric regarding alleged "deception" by Defendants fails to establish extraordinary circumstances vis-à-vis the IKON Defendants and has no basis in fact. Paneccasio has been aware, since before the inception of the Plan, that it contained a provision permitting the IKON Board of Directors to terminate the Plan under certain circumstances. Paneccasio elected to participate fully apprised of the fact that the Plan could be terminated. (Paneccasio Dep. 32:16-25; 33:10-12; 34:8-14; 35:13-23.) Because nothing in the Early Retirement Package abrogated the right of IKON's Board of Directors to invoke the Termination Provision, Paneccasio has failed to establish the extraordinary circumstances necessary to his estoppel claim and the Court should enter judgment in favor of the IKON Defendants. See, e.g., Edwards v. Akzo Nobel, Inc., 193 F. Supp. 2d 680 (W.D.N.Y. 2001).

### 2. The Plan Was Properly Terminated By The Board Of Directors.

In an attempt to rebut the factual basis provided by the IKON Defendants that substantiates the reasons underlying the Board of Directors' decision to terminate the Plan, Paneccasio makes improper reference to a settlement by IKON of a series of separate and unrelated matters. By referring to IKON's settlement of these unrelated matters, Paneccasio seeks to introduce evidence barred by Rule 408 of the Federal Rules of Evidence. Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In applying Rule 408, the Second Circuit has explained the rationale for the rule as "encouraging settlement by protecting parties to a settlement from having their good-faith efforts to settle a dispute used against them in subsequent litigation." See American Society of Composers, Authors and Publishers v. Showtime/The Movie Channel, 912 F.2d 563, 580 (2d Cir. 1990). Under Rule 408, Paneccasio should be barred from using IKON's settlement of these unrelated matters as evidence in this case.

In addition, Paneccasio has failed to lay the proper foundation for establishing the relevance of the settlements. The IKON Defendants have provided evidence through deposition testimony and affidavits that the basis for the termination of the Plan was the Board of Directors' determination that the decline in interest rates and the decrease in participant deferrals would cause an adverse financial impact on IKON. (Paragraphs 40-45 of the IKON Defendants' Local Rule 56(a)(1) Statement.) Paneccasio baldly denies that the stated reasons were the "justifiable" or "true" reasons for the termination. The only substantiation he provides on this point is to refer to inadmissible evidence of the existence of settlements IKON

entered into in 1999 without giving a shred of evidence to connect the settlements to the Board's decision to terminate the Plan.[2]

On the other hand, Paneccasio has failed to controvert the facts alleged by the IKON Defendants that there was a decline in interest rates and a decrease in the number of participants making deferrals that affected the financial impact the Plan would have on IKON. See Paragraphs 41-44 of the IKON Defendants' Local Rule 56(a)(1) Statement and Paneccasio's Local Rule 56(a)(2) Statement in Response thereto.[3] By failing to respond to the facts alleged in Paragraph 41-44, Paneccasio should be deemed to have admitted these facts as true. See D. Conn. L. R. 56(a)(1) ("[A]ll material facts set forth in [a Rule 56(a)(1) Statement] will be deemed admitted unless controverted . . . ."); Vines v. Callahan, 2005 WL 94531, at *5 n.1 (D. Conn. Jan. 13, 2005); see also Chance v. Cundy, No. Civ. A. 303CV40JCH, 2004 WL 2009282, at *3 (D. Conn. Sep. 7, 2004) ("Where a moving party fails to respond to facts asserted in support of summary judgment, the court may accept the movant's factual assertions as true.").

---

[2] Beyond the fact that Paneccasio's assertions have no evidentiary basis, they defy common sense. The IKON Defendants have provided evidence, uncontroverted by Paneccasio, that the order of magnitude of the adverse financial impact that the Plan would have in the years 2000 through 2004 would be approximately $1 million per year. (Hope Decl. ¶18, App. Ex. 1.) This is a drop in the bucket compared to the $121.1 million that Paneccasio asserts the unrelated settlements cost IKON. Even under Paneccasio's unsubstantiated theory, termination of the Plan would do little to recover the cost of settling the unrelated matters.

[3] For example, the IKON Defendants allege in Paragraph 39 that "In 1999, the Split Dollar Policies had a rate of return of approximately 6% per year, down from the 9% per year originally contemplated at the time the Plan was first established in 1991. (Hope Decl. ¶ 16, App. Ex. 1.)" Paneccasio responds by stating: "Deny that Hope's declaration was either justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (see, Ex. 14 and Responses to 37 and 38 above)." Paragraph 39, however, contained only a statement relating to the fact that interest rates declined, and contained no allegation that this was the reason for the termination of the Plan.

In light of Paneccasio's failure to controvert the decline in interest rates, the resulting increase in IKON's cash outlays with negative earnings impacts, and the decrease in participant deferrals, his attempt to introduce inadmissible evidence of unrelated settlements, without an iota of evidence linking the settlements to the decision to terminate the Plan, is woefully insufficient to raise a genuine issue of material fact. Thus, Paneccasio has failed to distinguish this case from Holcomb v. IKON Office Solutions, Inc., Civil Action No. 2:03-CV-106, where the District of Vermont determined that the Plan was properly terminated. See also Gallione v. Flaherty, 70 F.3d 724, 727-28 (2d Cir. 1995) (upholding the termination of a top hat plan).[4]

### B. Judgment Should Enter In Favor Of The IKON Defendants On Paneccasio's ADEA Claim.

Paneccasio appears to argue that the IKON Defendants should be liable to him under the ADEA under a joint action theory. (Opposition at 14-19.) None of Paneccasio's factual assertions, however, addresses the elements identified by the Court in its Ruling on Motions to Dismiss in this regard. As this Court noted in its Ruling:

> In the employment context, liability may attach to an affiliated corporation if the plaintiff can demonstrate that there are "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to

---

[4] In a footnote, based upon the Second Circuit's dicta in Gallione, Paneccasio asks the Court to reconsider its prior decision to dismiss his state law claims as preempted by ERISA. Such a request for reconsideration is untimely under D. Conn. L. Civ. R. 7(c)(1). (Opposition at 30 n.3.) Nonetheless, the holding of Gallione, that top hat plans can be terminated, is applicable here. In Gallione, the plaintiff brought a claim for benefits under a terminated top hat plan, seeking payment of the pre-termination benefits that would have been available had the plant not been terminated. The Second Circuit upheld the district court's decision to grant the defendants' motion for summary judgment, holding that ERISA's vesting provisions did not apply to top hat plans and that nothing in the top hat plan at issue in that case created a contractual right to benefits thereunder. Id. at 727-29.

> justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."
>
> The Second Circuit has established a four-part test indicating what a plaintiff must demonstrate in order to establish that corporations are related in such a manner: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."

Ruling at 7 (citations omitted).

Nothing that Paneccasio stated in his Opposition shows any interrelation of operations, centralized control of labor relations, common management, or common ownership or financial control between Alco and IKON on the one hand, and Unisource and Georgia-Pacific on the other. Instead, Paneccasio's description of the manner in which Alco/IKON interacted with Unisource/Georgia-Pacific exemplifies how two distinct corporate entities deal with one another. (Opposition at 14-19.) Record evidence presented by the IKON Defendants and the Unisource Defendants, however, demonstrates that, as of the effective date of the Plan termination, neither Alco nor IKON was Paneccasio's employer and there was no centralized control of labor relations between Alco and IKON, on the one hand, and Unisource and Georgia-Pacific, on the other. (Hope Decl. ¶¶ 22 & 23, App. Ex. 1; Melampy Aff. ¶¶ 4 & 9 attached as Ex. F to the Unisource Defendants' Rule 56(a)(1) Statement.) Paneccasio's description of numerous conversations between IKON and Unisource and Georgia-Pacific does nothing to rebut this evidence. Because none of the IKON Defendants was Paneccasio's employer at the time the Plan was terminated, they cannot be found liable to him under the ADEA.

In addition, Paneccasio has failed to address in his Opposition the fact that no age discrimination ever took place because all Plan participants who were similarly situated to

Paneccasio were treated in exactly the same manner in accordance with the Plan's terms. (Memorandum at 18.) See Devlin v. Transportation Communications Int'l Union, 175 F.3d 121 (2d Cir. 1999) (upholding district court's decision that the elimination of death benefit fund, in its entirety, did not violate the ADEA because plaintiffs could not show discrimination, much less unlawful discrimination – the fund was terminated as to all members and retirees, not just the older constituents). Indeed, the record is completely devoid of any evidence of age-discriminatory animus.

The Court should also reject Paneccasio's argument that the Early Retirement Package itself constituted a violation of the ADEA. As Paneccasio has conceded, the offer by an employer of voluntary early retirement is expressly permitted by the ADEA. (Opposition at 13.) See, e.g., Auerbach v. Board of Educ., 136 F.3d 104 (2d Cir. 1998) (holding that early retirement incentive plan was lawful under the ADEA). Nonetheless, Paneccasio seems to argue that any "deception" made to an employee who is 57 years old constitutes a violation of the ADEA. First, as discussed above, there was no deception – the Early Retirement Package expressly incorporated the terms of the Plan including the Plan's Termination Provision giving the IKON Board of Directors to terminate the Plan. Second, although Paneccasio asserts that he was 57, and therefore protected under the ADEA, he gives no explanation of how he was allegedly discriminated against *because of* his age. See, e.g., Patterson v. J.P. Morgan Chase & Co., 2004 WL 1920215, at *5 (S.D.N.Y. Aug. 26, 2004) ("Aside from pointing out that she was the oldest person in the office, Patterson does not put forward any other evidence of age discrimination. Without additional evidence, Patterson has not met her prima facie burden of production to sustain her charge against summary judgment.") Third, Paneccasio's claim

that the Early Retirement Package was not a bona fide employee benefit plan is premised entirely on the false notion that he would have received the Plan's Pre-Termination Benefit had he not retired under the Early Retirement Package. (Opposition at 12.) In fact, even if Paneccasio had opted not to retire under the Early Retirement Package, because the Plan was terminated before he attained age 65, he still would have received the Termination Benefit after the Plan was terminated effective December 31, 2000, and not the Pre-Termination Benefit he now seeks. (Termination Provision, Plan Section 19.) The Early Retirement Package was, in fact, a bona fide employee benefit plan exempt from the ADEA.

Finally, Paneccasio's argument that the applicable statute of limitations should be tolled is also flawed. Paneccasio claims that there should be equitable tolling based on fraudulent concealment from 1994 to 2000 because of conversations that took place starting in 1999 regarding the possibility of IKON's Board of Directors exercising its discretion to terminate the Plan. (Opposition at 19-22.) The record shows, however, that there was neither fraud nor concealment. Paneccasio has known since before the Plan was established in 1991 that its terms provided the IKON Board of Directors the right to terminate the Plan under certain circumstances. (Paneccasio Dep. 31:16-25; 32:10-12; 33:8-14; 34:13-23, App. Ex. 4.) Nothing in the 1994 Early Retirement Package abrogated this provision. In October 2000, Paneccasio, along with all other Plan participants were informed that the Plan would be terminated effective December 31, 2000. (Opposition at 21.) Accordingly, there is no basis in fact for Paneccasio's claim that the statute of limitations should be tolled and the Court should enter judgment in favor of the IKON Defendants on Paneccasio's ADEA claim.

## III. CONCLUSION

For the foregoing reasons, the IKON Defendants respectfully request that their motion for summary judgment be granted and the Court order that judgment enter in their favor and against Plaintiff Eugene Paneccasio.

Respectfully submitted,

*/s/ PM Fahey*

Kay Kyungsun Yu (ct13440)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981- 4188
(215) 689-4515 (facsimile)

Of Counsel:

Joseph J. Costello
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5295

Local Counsel:

Robert L. Wyld (ct04333)
Patrick M. Fahey (ct13862)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
(860) 251-5000

Attorneys for the IKON Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via First-Class, United States mail on this 18th day of February, 2005 on the following:

> Andrew B. Bowman, Esq.
> 1804 Post Road East
> Westport, CT 06880
>
> Rayne Rasty, Esq.
> Georgia-Pacific Corporation
> 133 Peachtree Street NE
> Atlanta, GA 30303-1847
>
> Felix J. Springer, Esq.
> Jennifer L. Sachs, Esq.
> Day, Berry & Howard
> CityPlace I
> Hartford, CT 06103-3499

395397 v.01

                                                    _/s/ Patrick M. Fahey_
                                                              Patrick M. Fahey